METROPOLITAN LIFE INSURANCE COMPANY *v.* FIDELITY TRUST COMPANY, GDN.

[No. 27,030. Filed May 17, 1938.]

*Miller, Miller & Bredell,* for appellant.

*L. Russell Newgent,* for appellee.

FANSLER, J.—This is an action by the appellee to recover the proceeds of two industrial life insurance policies for $250 each upon the life of Dan Nickoloff. There was a trial, and judgment for the appellee for the face of the policies and interest.

The errors assigned question the sufficiency of the evidence.

The defendant answered that the policies in question were issued on May 7, 1934, upon the application of the insured, and without a medical examination; that the insured died on June 16, 1934; that, as an inducement for the issuing of the policies, the insured in the applications represented that he had never had any of a large number of specified diseases, and that "I have never been under treatment in any clinic, dispensary, hospital or asylum, nor been an inmate of any almshouse or other institution"; and further represented that he was at the time of the applications in sound health. It is alleged in the answers that at the time of the applications the insured was suffering from tuberculosis, a disease of the heart, and certain other diseases. In the complaint it is alleged that the insured died of heart trouble. There was no evidence as to the cause of the death of the insured. There was evidence that the insured had received treatments in three different clinics in the Indianapolis City Hospital; 5 in the year 1931, 35 in the year 1932, 32 in the year 1933, and 19 in the year 1934. The applications for the insurance

were signed on April 18, 1934. The policies were delivered on or about May 10th. He received treatments at the clinic on June 9th and on June 16th, the date of his death. The policies were issued without a medical examination, upon what is known as a non-medical application. The evidence shows that, when such an application discloses that the applicant has been treated by a doctor, or in a clinic or hospital, within a period of three years, a medical examination is required before the application is passed on. The appellant offered to prove the character of the diseases or ailments for which the insured was treated, by the hospital records, but the appellee objected on the ground of privilege, and the evidence was excluded.

That the representation concerning hospital treatments was false is beyond question. Appellee contends, however, that the false representation is not shown to have been material, since the character of the diseases or ailments for which treatment was received is not disclosed; and that, since the withholding of information concerning treatment for trivial or unimportant illnesses is not sufficient to support a charge of fraud, it must be assumed that the numerous treatments of the insured were for some trivial matter.

One witness called by the appellee testified that he had known the insured for many years; that he saw him once a week; and that he appeared in good health. Another witness testified that he saw the insured and ate with him every day; that he appeared in good health; and that he always ate substantial meals.

There is no provision in the applications or policies by which the insured waived the statutory privilege and agreed that his physicians might testify, although there are such provisions in some of the appellant's policies. See *Metropolitan Life Insurance Co.* v. *Willis, Adm'r* (1906), 37 Ind. App. 48, 76 N. E.

560. Appellant has called attention to *Travelers' Insurance Co.* v. *Pomerantz et al.* (1927), 246 N. Y. 63, 158 N. E. 21, in which, under similar circumstances, it was held that proof of medical attention and a failure to disclose it in the application was sufficient to establish a prima facie case of substantial misrepresentation. The reasoning in the opinion is highly persuasive, but the conclusion of the court is based, in part at least, upon the theory that, where a party takes advantage of a statutory privilege to exclude the testimony of a physician, an inference may be drawn that the testimony, if given, would be unfavorable to him. This view seems to be supported by some, at least, of the New York cases. The weight of authority is to the contrary, however, and it must be considered settled in this state that the benefit of the privilege cannot be impaired by permitting an unfavorable inference to be drawn from its exercise. *William Laurie Co.* v. *McCullough* (1910), 174 Ind. 477, 90 N. E. 1014, 92 N. E. 337.

The facts were submitted to the jury under instructions of which the appellant does not complain. It must be assumed that the jury indulged in no inferences unfavorable to the appellee by reason of the exclusion of the hospital records, and that it considered the visits to the clinics, together with the evidence of the witnesses that the insured appeared to be in good health and that he ate every day like a healthy man, and concluded that the appellant had not sustained the burden of showing that the misrepresentations were of a substantial character. In *Metropolitan Life Insurance Co.* v. *Becraft* (1938), 213 Ind. 378, 388, 12 N. E. (2d) 952, 956, it is said: "The jury may not arbitrarily decide the question contrary to the preponderance of the evidence. Where the evidence is such that there can be no reasonable difference of opinion, the court will control the determination of the jury, but where the

evidence is such that reasonable men might differ in their conclusions, the matter will be left to the jury."

As indicated in the Becraft case, there has been much difficulty at times in determining whether the facts were such that the materiality of the misrepresentations could be determined as a matter of law. The discussion in the New York case above referred to indicates the difficulty in arriving at the conclusion that reasonable minds might differ upon the question where numerous medical treatments are disclosed and there is no showing as to the character of the treatments or the ailments involved. But in this case there is evidence of apparent good health during all the time involved. We must assume that the instructions clearly and correctly explained the issue. There is nothing to indicate that the result was affected by improper considerations. Doubt must be resolved in favor of the correctness of the verdict, and it must be concluded that the evidence is such that reasonable minds might differ in their conclusion.

Judgment affirmed.