## BUCKLEY *v.* STATE OF INDIANA.

[No. 769S150. Filed September 14, 1970. No petition for rehearing filed.]

*Malcolm G. Montgomery,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter E. Bravard, Jr.,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by affidavit with the crime of theft, said affidavit reading in pertinent part as follows:

> "(T)hat FRANK ALMON BUCKLEY on or about the 26th day of February A.D., 1969, at said County and State as affiant verily believes committed the crime of theft in that he knowingly, unlawfully and feloniously obtained and exerted unauthorized control over the property of GREAT SCOT SUPERMARKET CONREN, INC., a corporation, to-wit: lawful and current money of the United States of America of the value of One Hundred Forty-five Dollars ($145.00), intending to deprive GREAT SCOT SUPERMARKET CONREN, INC., a corporation, permanently of the use and benefit of said property. Then and there being contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

On March 10, 1969, appellant waived arraignment, entered a plea of not guilty to the crime as charged, and waived his right to trial by jury. On April 3, 1969, this cause was tried to the court without the intervention of a jury, and on the same day the court found appellant guilty of the crime as

charged. A pre-sentence investigation report was ordered to be filed by the Chief Probation Officer of the county. On April 10, 1969, the court sentenced appellant to the Indiana State Prison for a period of one (1) to ten (10) years.

Appellant filed his motion for new trial on April 30, 1969; the court overruled said motion on May 7, 1969. Appellant's sole Assignment of Error on appeal is that: "1. The Court erred in overruling appellant's motion for a new trial."

From the evidence adduced at trial, viewed most favorably to the State, it appears that on the evening of February 26, 1969, the appellant entered the Great Scot Supermarket located at the corner of Main and Franklin Streets in Evansville, Indiana. After entering, appellant walked around the store numerous times, reportedly drinking orange juice from a bottle. He approached the front of the store where the cash registers were located and stood there for approximately fifteen to twenty minutes. He then walked up to Janet Rech, a cashier in the store working one of the check-out lanes, reached into her cash register drawer and removed some money saying "I am taking this." He then turned and walked out of the store.

Donald Diamond, a customer being served by Janet Rech, witnessed the events. He saw appellant take the money from the cash register. When appellant left the store, Diamond gave chase and apprehended appellant some 75 to 100 yards from the store where he held the appellant until a policeman arrived. Diamond was aware that appellant had apparently been drinking, but noted that his ability to run had not been impaired.

James Atherton, a police officer working as a security guard at the store on the evening in question, assisted in appellant's apprehension. Subsequent to placing appellant under arrest, Atherton searched appellant and found $145.00 in five and ten dollar bill denominations in his right overcoat pocket. After being advised of his rights, appellant admitted to Ather-

ton that he had no money on his person when he entered the store. Appellant was later taken to the Evansville Police Station, and, after being advised of his rights, he again admitted that at the time he entered the market he had no money on his person.

Shortly after the events described above, Robert Bastnagle, the assistant manager of the Great Scot Supermarket, determined that $145.00 had, in fact, been taken from Janet Rech's cash drawer.

Appellant's first argument on appeal is that the State of Indiana failed to prove that GREAT SCOT SUPERMARKET CONREN, INC., was the owner or in possession of the property alleged to have been stolen as stated in the affidavit. It is well settled in this state that the name of the owner of the property alleged to have been stolen is a material allegation of the affidavit, and that the proof thereof must be established by the evidence beyond a reasonable doubt in order to sustain a conviction. *Rhoades* v. *State* (1946), 244 Ind. 569, 70 N. E. 2d 27; *Baker* v. *State* (1928), 200 Ind. 336, 163 N. E. 268.

We feel the evidence presented was sufficient to prove that the money stolen did in fact belong to the GREAT SCOT SUPERMARKET CONREN, INC. Those employees of the supermarket who testified below variously referred to the corporation as the Great Scot Supermarket, the Great Scot store, and simply Great Scot. However, the testimony of Jim Hawkins, the manager of the supermarket, is significant in this regard:

"Q.  And I will ask you when money is in the cash register, who does that belong to? At the Great Scot store?

A.  It belongs to the Great Scot store.

Q.  And what is the official name of the Great Scot store?

A.  The company name is Conren, Inc.

Q.  Conren?

A.  C-o-n-r-e-n.

Q. I will ask you whether or not that is a corporation?
A. Yes."

(Tr. p. 49)

The cumulative effect of the testimony presented to the trial court clearly shows that Great Scot Supermarket Conren, Inc., the entity named in the affidavit, was in fact the owner of the money stolen. There was no conflicting evidence as to who was the owner of the property, but merely as to the correct name of said owner. This Court has stated on numerous occasions that it will consider only that evidence most favorable to the State together with all logical and reasonable inferences which can be drawn therefrom. *McGill* v. *State* (1969), 252 Ind. 293, 247 N. E. 2d 514.

Burns Ann. Stat. § 9-1127 (1956 Repl.) states that:

"No indictment or affidavit shall be deemed invalid, nor shall the same be set aside or quashed, nor shall the trial, judgment or other proceeding, be stayed, arrested or in any manner affected for any of the following defects:
* * * * *
Sixth. For any surplusage *or repugnant allegation, when there is sufficient matter alleged to indicate the crime* and person charged." (Emphasis supplied)

Appellant further argues that his conviction should be reversed due to the fact that the evidence shows that he was in such a drunken condition so as to be unable to form the necessary intent to commit the crime of theft as alleged in the affidavit. The evidence shows that appellant was sufficiently alert to be able to reach twice into the cash register drawer and pick out the money, speak distinctly to the cashier, turn and leave the store, run "pretty good" for 75 to 100 yards, and make certain statements at the police station. In any event, the question of whether or not the appellant's intoxication was to such an extent that he could not form the specific intent to commit the crime with which he is charged is a question for the trier of fact. *Davis*

v. *State* (1968), 249 Ind. 373, 232 N. E. 2d 867; *Cotton* v. *State* (1965), 247 Ind. 56, 211 N. E. 2d 158. The determination made by the trial court in the case at bar is supported by the evidence, and, if there is any evidence to support the judgment of the court it will be sustained. *Fair* v. *State* (1969), 252 Ind. 494, 250 N. E. 2d 744.

The appellant finally argues that the State did not prove beyond a reasonable doubt that he committed the theft of property of a value in excess of $100. We cite the following testimony of Robert Bastnagle, assistant manager of the supermarket, in answer to appellant's argument:

"Q. And what happended when Janet Rech got ready to work?
A. Well, when she came on duty, I took a new till which consists of $50.00 in change and took it to the register where she was going to work. I took a reading and put the drawer in the register.

\* \* \* \* \*

Q. Later did you go in the cash register?
A. When I came back in I went and pulled her register, took it to the service counter and verified if there was any money missing.

Q. And did you count the money?
A. *I counted the money myself and between the readings which gives us the actual amount of cash that is supposed to be in the drawer for her to balance I was $145.00 short.*" (Emphasis supplied)
(Tr. pp. 53, 55)

On cross-examination Mr. Bastnagle testified to the following:

"Q. Did you talk to the police officers after Mr. Buckley was apprehended?
A. The only thing I done, they asked me to verify the drawer, which I did.

Q. And so, in other words, you were told that they found $145.00 on him before you verified this, is that correct?
A. They had an amount of money, I don't remember if they told me how much, and they asked me to verify

it and I verified that the drawer was short $145.00, and they said that was what they had.

\* \* \* \* \*

Q. Could you have made an error concerning this calculation?

A. I checked it pretty close, I don't think I could have."

(Tr. pp. 57, 58)

The following evidence also appears in the record: (1) Janet Rech, the cashier from whose register the money was taken, testified that she saw policeman Atherton count out $145.00; (2) Atherton testified that he searched the appellant immediately after his capture and found $145.00, in five and ten dollar denominations, in appellant's overcoat pocket; (3) he also testified that appellant, after being fully advised of his constitutional rights, admitted that he did not have any money of his own when he entered the store on the night in question.

The appellant attempted to discredit the witnesses called on behalf of the State by questioning their knowledge of how much money was actually in the cash register immediately prior to the theft and how much money was, in fact, stolen. He also personally testified that he had $60.00 on his person when he entered the store. The determination of questions relating to the weight to be given certain evidence rests entirely with the trial court, and this Court has oftentimes held that on appeal it will not weigh the evidence nor determine the credibility of the witnesses. *Gibson* v. *State* (1968), 251 Ind. 231, 240 N. E. 2d 812.

Judgment affirmed.

Hunter, C.J., Arterburn, DeBruler and Givan, JJ., concur.

NOTE.—Reported in 261 N. E. 2d 854.