STEVEN M. PENNEBAKER *v.* STATE OF INDIANA.

[No. 969S203. Filed June 17, 1971.]

*Goltra, Cline & King,* of Columbus, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from a conviction of theft in the Bartholomew Circuit Court. Appellant was charged by

affidavit with theft of an auto from one Godfrey Harrison. Trial by jury was waived and trial was had by court. Appellant received a sentence of one to ten years in the State Reformatory.

Appellant presents several alleged errors for review by this Court, however, we deem it necessary to deal with only one: namely, whether the trial court committed error in admitting certain evidence over objection, relating to the origin of a certain automobile transmission.

This case may be characterized as resting upon a chain of circumstantial evidence. The evidence presented showed that on or about June 22, 1968, Godfrey Harrison, sole owner of the Car Mart, in Columbus, Indiana, reported that a green, 1966 Pontiac GTO, with 4-speed transmission had been stolen from his used car lot. The stolen car was found by the county sheriff, who testified that when found the car had been stripped; the engine, transmission, wheels and seats had been removed and the car burned. The sheriff recovered a transmission from one W. B. Burton, a junk dealer, which the sheriff identified as the transmission from the stolen car. The sheriff's identification was based upon the existence of certain corresponding numbers stamped on the transmission and the doorpost of the stolen car. W. B. Burton testified that he had purchased the transmission from the appellant on June 24, 1968, two days after the theft of the car, for fifty dollars.

The State's witness Furkin testified that at the request of the appellant he drove a wrecker to some remote area where he and the appellant proceeded to remove an engine from a car and dropped the engine in some weeds. This witness further stated that payment for this work was some bucket seats which he in turn sold to one Cal Burton. Two bucket seats were introduced into evidence along with a Pontiac maintenance booklet which was found wedged in the seats by the sheriff who recovered the seats from Cal Burton. The number in the booklet matched that of the stolen vehicle. Cal Burton did not testify and there was no testimony that the seats ad-

mitted in evidence were in fact the same seats which Cal Burton had received from Furkin.

Godfrey Harrison testified that the appellant had visited his used car lot a number of times two or three weeks prior to the theft, and that appellant had been accompanied by his wife and child, and that appellant had driven the car which was later stolen, and that appellant had unsuccessfully tried to buy it from him.

Central to the State's case against appellant was the testimony of the sheriff that the transmission which the appellant sold the witness W. B. Burton two days after the theft, was in fact the transmission from the stolen car. This identification of the tranmission constituted a link in the only complete chain of circumstantial evidence which connected this appellant with the theft of the car. Appellant's counsel objected to this testimony of the sheriff three times, on the grounds that this testimony would be hearsay, and, therefore, inadmissible. Prior to the following excerpt from the testimony of the sheriff, the sheriff testified that the number stamped on the transmission was 149885, and the owner of the stolen car testified that the serial number of the stolen car carried a serial number of 242176P149885. The rulings of the trial court, alleged to have been error, is contained in the following excerpt from the testimony of the county sheriff upon direct examination by the State:

"Q. In the course of your investigation, did you attempt to connect this particular transmission with the Pontiac GTO stolen from Mr. Godfrey Harrison?

A. Yes, sir, I did.

Q. And what did your investigation in that regard reveal?

A. I called Indianapolis, Indiana State Police, and they sent down a specialist to check the transmission.

Q. All right, and are there——, is there anything about this particular transmission to indicate that it is one and the same transmission that came out of the 1966 Pontiac GTO that is described in State's Exhibit 1, the title of this stolen vehicle?

OBJECTION: Mr. Goltra
I'm going to object to that for the reason it's leading, for the reason it suggests an answer on this.

JUDGE: Objection overruled.

MR. GOLTRA: May I ask a preliminary question?

JUDGE: Yes, proceed.

Q. Sheriff, what you would testify to here as to any marks or anything about this, you have found out by talking to a State policeman, as I understand, pointing out some things to you? As to this transmission here?

A. Well, I might say that I've been told, but to confirm—

Q. Yes, told by somebody, yes.

A. But to confirm what I was needing to know, I would call them.

OBJECTION: Mr. Goltra
Then I would object for the reason he is now going to testify on hearsay, something he's been told by somebody else about this transmission. We're entitled to have whoever that is here so we can cross examine them.

\* \* \*

JUDGE: Objection overruled. I think that the mere fact that knowledge or some degree of expertise is acquired by communication with someone else, or study, would not make the answer to that question objectionable, so the ruling stands.

Q. All right, were there such identifying marks on this transmission?

A. Yes, sir.

Q. And what are they?

A. They are the last six numbers from the I.D. of the car, stamped on the transmission of this particular model.

Q. All right, and does this in any way distinguish this particular transmission from other transmissions?

A. Yes, this transmission would be identified with this particular 'ident.' number on this GTO, with the last six numbers of the 'ident.' number, would be on the transmission. They are embossed on, at the head of the transmission.

Q. All right, is this, then, the one and the same transmission that belonged to and was in this 1966 Pontiac

GTO that was stolen from Godfrey Harrison's Car Mart?

OBJECTION: Mr. Goltra

I object to that, because there's no way he could know that, if it please the Court, no way he could know this.

* * *

JUDGE: Objection overruled. The witness may answer.

A. Yes, sir.

Q. This is the same transmission?

A. Yes, sir."

On cross-examination, defense counsel again questioned the sheriff to determine the basis for the sheriff's testimony that the transmission sold by the appellant to W. B. Burton two days after the theft, was the transmission from the stolen car:

"Q. This transmission, again, you say that that's got the numbers on it that indicate that it came out of this specific car?

A. Yes, sir.

Q. And how did you learn about these numbers?

A. From talking with dealers and by reading about it, and from Mr. —, I have his name over there, from the Indiana State Police.

Q. That's where you found out about these numbers? You checked it out and everything with the Indiana State Police. Is that a fair statement?

A. Right.

Q. So what you just did, you made a telephone call, or something like that, to the Indiana State Police and

A. No, sir, he came down and examined it.

OBJECTION: Mr. Goltra

He came down and examined this? Now if it please the Court, on the basis of this, I'm going to move that this go out of the record, because, as I said before, this is not this Sheriff's testimony. This is what a state policeman came down and examined. He's basing all his testimony on what a state policeman told him.

JUDGE: Motion overruled.

Q. Well, now 149885 is stamped on this transmission, is that right?

A. That's right.

Q. And each transmission has the serial number on it, is that right, and it's a different serial number?

A. For this particular model, yes.

Q. For a GTO, you mean and no other kind of a car?

A. Well, some have it and some don't have it.

Q. Some GTO's have them and some don't have them?

A. Well, it's according to your years and models.

Q. Well, what I'm trying to talk about, here's a number on this car, 149885. Now you're saying, under oath, as I understand it, that this transmission was in this automobile of Godfrey Harrison's when it left the factory? Is that right?

A. To the best of my knowledge, yes.

Q. Well, no, this is what you're testifying to, isn't it?

A. That's right.

Q. Do they have to, well, in other words, every car built in 19—, was this a 1966 Pontiac? All right this was a 1966 Pontiac. Every 1966 Pontiac then had a number on it, a GTO, had a number on it, is that right?

A. Four-speed probably had.

Q. Just a four-speed, but nothing other than a four-speed?

A. Well, this I don't know, but to my knowledge it should be a four-speed."

On re-direct examination, the State offered the transmission itself into evidence, and the court admitted it over strenuous objection of defense counsel.

Over the objections of the appellant, the sheriff, witness for the prosecution, was permitted to testify that the transmission, sold by appellant to the witness W. B. Burton two days after the theft, came from the stolen car. The sheriff further stated that his conclusion was based upon the existence of the corresponding numbers embossed upon the transmission and upon the stolen car. He further explained that his knowledge of the significance of these numbers was based upon (1) representations made to him by the state police specialist who was called by him to inspect the transmission, (2) conversations

with car dealers, and (3) reading about it. The exact nature and extent of the witness's knowledge received from each of these three sources is not disclosed by the record, neither is the degree of reliance placed by the witness on each source disclosed. The state police specialist did not testify, neither did the dealers with whom he talked, nor was the written material which he had read described, admitted in evidence, or available at trial. Appellant contends that the sheriff's testimony that the transmission came from the stolen car should not have been permitted, since it constitutes hearsay evidence.

In *Wells* v. *State* (1970), 254 Ind. 608, 261 N. E. 2d 865, this Court said:

> " 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' (McCormack, Evidence § 225)

> See also Trustees of Indiana University v. Williams (1969), Ind., 251 N. E. 2d 439; Mark v. City of Indianapolis, Etc. (1966), 247 Ind. 511, 219 N. E. 2d 434; Wayne Works v. Hicks Body Co. (1944), 115 Ind. App. 10, 55 N. E. 2d 382; 5 Wigmore, Evidence, § 1361 (3d ed., 1940) ; 2 Jones, Evidence, § 268 (Gard ed., 1958) ; Uniform Rules of Evidence, Rule 63 ; Model Code of Evidence, Rule 501; Proposed Rules of Evidence for U. S. District Courts, Rule 8-01. The principal reasons for the exclusion of hearsay evidence are that the out-of-court declarant was not under oath, not subject to confrontation by the trier-of-fact, and most importantly, not subject to cross-examination by the accused. McCormack, §§ 224, 225; Wigmore, §§ 1360 to 1365; 2 Jones, § 269." 261 N. E. 2d at 869.

It is true that not all evidence of extra-judicial utterances qualifies as hearsay evidence.

> "The theory of the Hearsay rule (*ante*, § 1361), is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extra-judicial

utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule.

"The prohibition of the Hearsay rule, then, does not apply to all words or utterances merely as such. If this fundamental principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excludes extra-judicial utterances only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted." 6 Wigmore, Evidence, § 1766 (3d ed., 1940).

*Harvey* v. *State* (1971), 256 Ind. 473, 269 N. E. 2d 759; *Wells* v. *State, supra; Trustees of Indiana University* v. *Williams* (1969), 252 Ind. 624, 251 N. E. 2d 439; McCormack, Evidence, § 225; 2 Jones, Evidence, § 271.

The only reasonable inference that can be made is that the sheriff's testimony was offered as evidence of the truth of the facts asserted to him by the police specialist and the car dealers. He was merely acting as a conduit for information possessed by them. Therefore, the sheriff's testimony was inadmissible as hearsay evidence. The value of the sheriff's testimony would depend upon the veracity and competence of the police specialist and car dealers who were not under oath and did not testify at the trial subject to cross-examination.

The sheriff also based his testimony upon "reading about it". What he in fact read is not identified in the record in any manner. We do not know the type, authoritativeness, or source of those materials. His testimony, insofar as it was based upon this source was likewise hearsay, since the written materials constituted statements of an out-of-court declarant, namely, the author of the materials, who is not even identified and who was not a witness at the trial subject to cross-examination by appellant. As stated in Wigmore, § 665b.3 an expert, testifying in his field, may be permitted to base his testimony upon books and materials read by him.

However, a lay witness should not be permitted to do so. In

this case, there was no attempt to qualify the sheriff as an expert in the numbering system used by the automobile manufacturers, and for the purpose of this issue, he was clearly testifying as a lay witness.

It was therefore error for the trial court to overrule appellant's objections to the sheriff's proffered testimony concerning the identification of the transmission.

The judgment of the trial court is reversed and the trial court ordered to grant appellant's motion for new trial.

Givan and Prentice, JJ., concur; Hunter, J., dissents with opinion in which Arterburn, C.J., concurs.

### DISSENTING OPINION

HUNTER, J.—After careful review of the majority opinion in this matter I find I must respectfully dissent. I see no need to reach the question of hearsay evidence in the disposition of this case and would affirm the conviction.

Testimony was admitted at trial from Godfrey Harrison, the owner of the car which was stolen. One element of that testimony was the serial number of the vehicle. The police officer whose remarks at trial are made the focal point of the majority opinion recounted his *personal* inspection of the transmission unit and related a series of numbers stamped thereon. Obviously there is a great similarity between the number the officer gave and that given by Harrison. In fact, the series of digits given by the officer matched exactly the last six digits of the vehicle identification number given by the owner.

It seems to me not unreasonable that a fair and logical inference could be drawn from the similarity of these numbers that the transmission unit did indeed come from the vehicle in question thereby linking appellant to the stolen automobile. Clearly such an inference was made by the trier of fact. Further, even assuming the testimony of the police officer which the majority denominates hearsay is in fact

hearsay, there exists a presumption that the court, as trier of fact, considered only that evidence properly before it, *Swift v. State* (1970), 255 Ind. 337, 264 N. E. 2d 317, and that it therefore did not enter into the decision. I find nothing to rebut that presumption.

For the foregoing reasons I must respectfully dissent.

Arterburn, C.J., concurs.

NOTE.—Reported in 270 N. E. 2d 756.