DONALD SMITH AND DELILAH GUIRE *v.* STATE OF INDIANA.

[No. 3-275A19. Filed December 30, 1975. Rehearing denied January 27, 1976. Transfer denied May 7, 1976.]

430

*Breclaw and Dywan,* of Griffith, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert M. Lingenfelter,* Deputy Attorney General, for appellee.

STATON, P.J.—Donald Smith and Delilah Guire were charged with theft[1] of two air conditioning units from Goldblatt Brothers, Inc., a department store in Hammond, Indiana. Smith had made two extrajudicial confessions of guilt—one to the store security officials when Smith returned the goods, and one to the police. At the court trial, these extrajudicial confessions were admitted into evidence over defense counsel's objections. Smith and Guire were convicted, and their timely filed motions to correct errors raise the following issues for our review:

(1) Was there sufficient independent evidence to establish the corpus delicti for the purpose of admitting into evidence Smith's extrajudicial confessions?

(2) Was the introduction into evidence of Smith's confession to the police, made under promise of no prosecution, reversible error?

(3) Was there sufficient evidence that Goldblatt Brothers, Inc., was the owner of the goods, as alleged in the indictment?

(4) Was there sufficient evidence of probative value from which the trier of facts could have reasonably inferred that Delilah Guire was guilty beyond a reasonable doubt?

We conclude that there was sufficient evidence of the corpus delicti to corroborate Smith's extrajudicial confessions. We conclude that any error in the admission of Smith's confession statement to the police was harmless. We conclude that the

1. IC 1971, 35-17-5-3(1)(a) and (2)(a), Ind. Ann. Stat. § 10-3030 (1)(a) and (2)(a) (Burns Supp. 1975).

State adequately proved that Goldblatt Brothers, Inc., was the owner of the goods, as alleged in the indictment. We affirm Smith's conviction.

We conclude that there is not sufficient evidence of probative value to support a reasonable inference of Guire's guilt beyond a reasonable doubt. We reverse Guire's conviction.

## I.

### The Evidence

Patrolman Kenneth Pence of the Hammond Police Department testified that in the early morning hours of June 4, 1973, he was walking a beat in downtown Hammond, Indiana. Pence approached the Goldblatt Brothers Store, where he knew that Smith (also a City policeman) was working as a night guard. The store was not open for business, but Pence knocked on the door and was admitted by Smith. Pence left soon after he arrived, but he returned a few hours later. When he returned, there were several people in the store, one of who was Guire, seated around a table in the cafeteria area. Shortly after he returned, Pence saw Smith, Guire, and one other person carry merchandise, including two large, heavy boxes, out of the store and place it in Smith's car. Smith then drove away. The person helping remove the merchandise stated to Pence that he "didn't know that air conditioners could be that heavy." A nonparticipant sitting at the table with Pence asked Pence "if it bothered [him] to see what was going on in front of [him]."

Barbara Divich was in charge of security at the Goldblatt Brothers Store. She testified that as the result of a routine inventory check she found that two Admiral air conditioners had disappeared from the store sometime between May 27, 1973, and June 7, 1973.

Roland Glick, the District Loss Prevention Supervisor for Goldblatt Brothers Corporation, testified that he heard through an intermediary that Smith had taken two air conditioners

from the Goldblatt store in Hammond. On June 22, 1973, on the arrangement of Divich, Glick met Smith and Guire at Divich's house. Smith turned over to Glick's custody two Admiral air conditioners in boxes marked "Goldblatt's Store 31." Glick told Smith that if Smith resigned there would be no prosecution for theft. Smith, without hesitation and in his own handwriting, filled out an "Employee's Voluntary Statement:"

> "On the 6 day of June 1973 at the hour of during the night while working at Goldblatt Bros. Inc., 5206 Hohman, Hammond, Inc. [sic], I, Donald J. Smith, while working night watchman on approx. 6-6-73 I took from the Store 2 Admiral Air Conditioners (10,000) 2 8 Trk. Tape Players and one Calculator. I have returned above items except 1 of the tape players which I will pay for; a total of $29.95 plus tax which is $31.15.
>
> Donald J. Smith [signed]"

Charles Mac of the Hammond Police Department talked to Smith on June 28, 1973, in the course of the police investigation of the theft at Goldblatts. Smith gave a statement to the police confessing that he had taken an air conditioner from the Goldblatt store in early June 1973 while working at a night watchman.[2] Although Mac testified that he made or heard no promise of no prosecution, the court accepted that an absent witness would testify that there was such a promise to induce this confession.

## II.

### Corpus Delicti

Smith contends that inadmissible evidence was heard in the attempt to prove the corpus delicti and that, without this inadmissible evidence, there was no independent proof of the corpus delicti to corroborate his extrajudicial confessions.

Either before or after an extrajudicial confession is admitted in evidence, there must be evidence independent of

---

2. Smith was not placed under arrest at this time. He did, however, sign a waiver of rights form before making the statement. Smith was later indicted by the Lake Grand Jury.

the confession to establish that the specific crime charged in the indictment or information was committed by someone at the time and place alleged. *Thomas* v. *State* (1975), 262 Ind. 590, 321 N.E.2d 194; *Ballard* v. *State* (1974), 262 Ind. 482, 318 N.E.2d 798; *Parker* v. *State* (1949), 228 Ind. 1, 88 N.E.2d 556, *rehearing denied*, 89 N.E.2d 442 (1950). Circumstantial evidence is sufficient to prove the corpus delicti to corroborate an extrajudicial confession. *Dunbar* v. *State* (1961), 242 Ind. 161, 177 N.E.2d 452; *Parker* v. *State, supra.* The rule requiring proof of the corpus delicti is a rule of caution to prevent a defendant from being convicted solely on his own statement. To corroborate an extrajudicial confession, the corpus delicti need not be established beyond a reasonable doubt. *Ballard* v. *State, supra; Dunbar* v. *State, supra; Holding* v. *State* (1963), 244 Ind. 75, 190 N.E.2d 660; *Parker* v. *State, supra.*

In the present case, the State established the corpus delicti through the testimony of Kenneth Pence, Barbara Divich, and Roland Glick. Pence testified that in the middle of the night of June 4, 1973, well beyond business hours, he observed Smith, Guire, and a third party carry two large, heavy boxes from Goldblatt Brothers Store to Smith's station wagon. Immediately thereafter, one of the accomplices commented that he didn't know that air conditioners could be that heavy. A nonparticipant asked Pence if it bothered him to see what was going on. Divich testified that she made a routine inventory check on June 7, 1973, which disclosed that the two air conditioners were missing from the store. Glick testified that he met Smith at Divich's house on June 22, 1973, and Smith turned over to Glick's custody two Admiral air conditioners. We conclude that, for the purpose of admitting into evidence Smith's extrajudicial confessions, there was sufficient proof of the corpus delicti—the theft of two air conditioners from the Goldblatt Brothers Store in early June 1973.

Smith contends that Divich's testimony relating to the inventory search which revealed two missing air conditioners was inadmissible hearsay. He argues that Divich's conclusion that items were missing was based in part upon information contained in documents, such as invoices and receipts, whose authors were not in court, were not identified, and were not subject to cross examination. He argues that Divich was only acting as a conduit for the information contained in the invoices and receipts, and, on the basis of *Pennebaker* v. *State* (1971), 256 Ind. 524, 270 N.E.2d 756, her testimony was inadmissible hearsay. We do not agree.

Hearsay is defined as follows:

"Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 246, at 584 (2d ed. E. Cleary 1970), *quoted in Pennebaker* v. *State, supra; Wells* v. *State* (1970), 254 Ind. 608, 261 N.E.2d 865.

In *Pennebaker* v. *State, supra,* a police officer testified that a certain transmission had come from a specific automobile. He stated that his conclusion was based on the identity of certain numbers embossed on the transmission and on the car. He explained that his knowledge of the significance of those numbers came from representations of a police specialist who inspected the transmission, conversations with car dealers, and reading about it. None of the officer's reading materials were introduced into evidence, and none of the people the officer talked to testified. The officer was not qualified as an expert in the numbering system used by car manufacturers. The Court held:

"The only reasonable inference that can be made is that the sheriff's testimony was offered as evidence of the truth of the facts asserted to him by the police specialist and the car dealers. He was merely acting as a conduit for information possessed by them. Therefore, the sheriff's testimony was inadmissible as hearsay evidence. The value

of the sheriff's testimony would depend upon the veracity and competence of the police specialist and car dealers who were not under oath and did not testify at the trial subject to cross-examination." 256 Ind. at 531, 270 N.E.2d at 760.

In the present case, Divich, as head of security for the Goldblatt Brothers Store, had the responsibility of performing regular inventory checks. In the course of these checks, she reviewed invoices, sales receipts, and lay-away receipts, and she also counted items of merchandise in various storage areas of the store. She was not a conduit of information from someone absent from the court when she testified that her June 7, 1973, inventory check revealed two missing air conditioners. She was a source of information not possessed by anyone else. Smith's objection is that Divich relied upon hearsay documents in reaching her conclusion. Although the invoices and receipts she relied upon were not offered into evidence, these documents could have been received in evidence under the business records exception to the hearsay rule—they were documents prepared and received in the regular course of business, the participants in their preparation could not be identified, and Divich would have been a qualified witness to lay a foundation for their admissibility. *See* McCORMICK'S, *supra*, § 312. Since the documents could have been received in evidence without a hearsay objection, Divich's testimony in reliance upon these documents was likewise not objectionable as hearsay.[3]

---

3. An objection to Divich's testimony under the best evidence rule would seem more appropriate. When the contents of a document are offered for proof of their accuracy, the document itself is the best evidence, and secondary evidence is inadmissible unless some exception is satisfied. This, however, was not argued. Further, it appears that Divich's testimony would have been competent. In *Hilligoss* v. *State* (1970), 253 Ind. 443, 255 N.E.2d 101, a similar case, a woman was robbed in a store she operated and was called to testify about the amount of money taken. The woman relied upon the information contained on a cash register tape. The court held that, since there was no attempt to prove what was on the tape, but instead how much money was missing, the woman was a competent witness. Similarly, in the present case, there was no attempt to prove what was in the invoices and receipts, but instead what merchandise was missing. It was within the

We conclude that Divich's testimony was not objectionable as hearsay. Divich's testimony, coupled with that of Pence and Glick, was sufficient independent evidence of the corpus delicti to corroborate Smith's extrajudicial confessions for the purpose of their admission into evidence.

## III.

### Voluntariness of Confession

Smith contends that the confession statement given to the Hammond Police Department should not have been admitted into evidence because the confession was extracted by the improper influence of a promise of no prosecution and, thus, was not free and voluntary. *See Malloy* v. *Hogan* (1964), 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. Smith, however, makes no argument that the confession he gave to Glick was involuntary. This confession, together with proof of the corpus delicti, was amply sufficient to sustain Smith's conviction. The second confession to the police was merely cumulative. Thus, we need not determine whether there was error in the admission into evidence of Smith's confession to the police. Any error was harmless beyond a reasonable doubt under the facts of this case. *See Larimer* v. *State* (1975), 163 Ind. App. 673, 326 N.E.2d 277; *Moss* v. *State* (1975), 165 Ind. App. 502, 333 N.E.2d 141.

## IV.

### Ownership of the Merchandise

Smith and Guire contend that the State failed to prove that Goldblatt Brothers, Inc., was the owner of the allegedly stolen merchandise. It is well-settled that the name of the owner of property alleged to have been stolen is a material allegation and must be proved beyond a reasonable doubt in order to sustain a conviction. *Buckley*

---

ambit of Divich's job to investigate and to take inventory checks. Divich was a competent witness as to the fact that two air conditioners were missing.

v. *State* (1970), 254 Ind. 621, 261 N.E.2d 854. It is not necessary that the State prove absolute ownership in the person alleged to be the owner. It is sufficient if the evidence shows that person to be in possession of the property. *Thomas* v. *State* (1970), 255 Ind. 131, 263 N.E.2d 158; *Gunder* v. *State* (1968), 250 Ind. 689, 238 N.E.2d 655; *Passwater* v. *State* (1967), 248 Ind. 454, 229 N.E.2d 718; *Lucas* v. *State* (1918), 187 Ind. 709, 121 N.E. 274. Further, the statutory definition of "owner" is as follows:

> " 'Owner' means a person, other than the actor, who has possession of or any other interest in the property involved, even though such interest or possession is unlawful, and without whose consent the actor has no authority to obtain or exert the complained of control over the property. An inference . . . that an owner is a corporation, organized and existing as such shall be drawn from any evidence that such owner is known by reputation to be a corporation or is held out to the public to be a corporation, or is operating under a name indicating or implying that such owner is a corporation." IC 1971, 35-17-5-13(12), Ind. Ann. Stat. § 10-3040(12) (Burns Supp. 1975).

From our examination of the evidence and the reasonable inferences therefrom, we conclude that ownership of the air conditioners by Goldblatt Brothers, Inc., was established beyond a reasonable doubt. The witnesses referred to the store variously as Goldblatt Brothers Corporation, Goldblatt Brothers Department Store, Goldblatt Brothers, and Goldblatts. The statute permits an inference of corporate status to be drawn from "any evidence that such owner is known by reputation to be a corporation . . . or is operating under a name indicating or implying that such owner is a corporation." *Id.* The reference to Goldblatts as a corporation sufficiently established Goldblatt's corporate status, as alleged in the indictment.

The evidence and the reasonable inferences therefrom show that Goldblatt Brothers, Inc., was in possession of the property within the department store building. Two large, heavy boxes

were carried out of the store building in the middle of the night. Later, it was discovered that two air conditioners were missing from the store's inventory. Smith returned two large boxes containing air conditioners to Goldblatt's. Marked on the outside of these boxes were the words "Goldblatt's Store 31." We conclude that the totality of the evidence and the reasonable inferences that may be drawn therefrom were sufficient to establish beyond a reasonable doubt that Goldblatt Brothers, Inc., owned the property allegedly stolen.

## V.

### Sufficiency of the Evidence to Sustain Guire's Conviction

Guire contends that the evidence was insufficient to sustain her conviction for theft.[4] We agree. The only evidence which tends in any way to incriminate Guire is that she helped Smith, who was a City policeman working as night watchman at Goldblatt's, carry two large boxes out of Goldblatt's store in the middle of the night, and that she was present with Smith when he returned two air conditioners and confessed his guilt to store officials. This evidence raises a mere suspicion of guilt, but does not prove, beyond a reasonable doubt, that Guire knowingly obtained or exerted unauthorized control over the allegedly stolen merchandise with the intent to deprive the owner of the use and benefit of the property, IC 1971, 35-17-5-3, Ind. Ann. Stat. § 10-3030 (Burns Supp. 1975), or that Guire knowingly aided and abetted Smith in the commission of the theft. Id. 35-1-29-1 (Burns Code Ed.). See Holtel v. State (1972), 155 Ind. App. 1, 290 N.E.2d 775; Mattingly v. State (1952), 230 Ind. 431, 104 N.E.2d 721.

---

4. In the summary of the argument portion of Guire's brief, appellant adequately informs this Court that the contention of error on appeal is that the evidence is insufficient on each element of the offense to support her conviction. To refuse to reach Guire's insufficiency of the evidence claim by invoking Indiana Rules of Procedure, Appellate Rule 8.3(A)(7), as suggested by the dissenting opinion, merely invites future post-conviction proceedings and results in piecemeal appellate review. Guire has substantially complied with the requirements of AP. 8.3(A)(7), and we have reviewed the sufficiency of the evidence on each element of the offense of theft.

Guire's conviction is reversed. Smith's conviction is affirmed.

Hoffman, J., concurs; Garrard, J., concurs in part and dissents in part with opinion.

OPINION CONCURRING IN PART AND DISSENTING IN PART

GARRARD, J.—I concur in the affirmance of Smith's conviction.

However, I dissent to that portion of the opinion reversing Guire's conviction.

The entire argument contained in Guire's brief addressed to the sufficiency of the evidence is as follows:

> "In the State of Indiana, it is well settled that to sustain a conviction, the record in a criminal case must contain some evidence to prove every essential element of the offense charged. [citation omitted] There is no evidence of probative value to prove that Delilah Guire committed the crime charged in the affidavit."

Such a bare assertion, without any specification of the elements of the offense, the evidence applicable to them, and upon which element or elements the deficiency is thought to exist, hardly complies with the requirements of Indiana Rules of Procedure, Appellate Rule 8.3(A)(7). *Foster* v. *State* (1974), 262 Ind. 567, 320 N.E.2d 745.

Moreover, it must be recalled that an accessory before the fact may be charged and convicted as a principal. IC 1971, 35-1-29-1 (Burns Code Ed.).

Here the evidence that Guire was in the store while it was closed for business and assisted in carrying the stolen items from the store to Smith's car was sufficient to establish that she aided and abetted commission of the theft. *See, Tinsley* v. *State* (1973), 260 Ind. 577, 298 N.E.2d 429, where substantially the same evidence was sufficient to sustain a conviction of being an accessory to burglary.

There was no error in this conviction and it should be affirmed.

NOTE.—Reported at 339 N.E.2d 118.