HOWARD *v.* STATE OF INDIANA.

[No. 868S133. Filed December 17, 1970. No petition for rehearing filed.]

*William C. Erbecker, James Manahan, Erbecker & Manahan,* of Indianapolis, for appellant.

*John J. Dillon,* Former Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by affidavit with the crime of theft as defined in Burns Ind. Stat., 1970 Supp., § 10-

3030 *et seq.* The act specifically alleged in the indictment was the unlawful obtaining and exerting unauthorized control over a certain motor vehicle. The cause was submitted to the court without a jury, and the appellant was found guilty of the included offense of obtaining and exerting unauthorized control over a motor vehicle under circumstances not amounting to theft as described in Burns Ind. Stat., 1970 Supp., § 10-3036. Appellant was sentenced to the Indiana State Farm for a period of six months.

The record in this case discloses the following:

A blue 1955 Chevrolet two door sedan owned by Bobby G. Gregory was left parked in front of Gregory's house on the evening of October 14, 1967. At approximately 10:00 A.M. on October 15, 1967, Gregory discovered that his car had been taken by some unauthorized person. He immediately phoned the Indianapolis Police Department and was asked to come in and fill out a stolen car report, which he did. In the meantime during the same morning Ralph Leibrandt, a deputy with the Marion County Sheriff's Department, was dispatched to investigate a certain automobile. When he arrived at the scene, he discovered the appellant asleep behind the wheel of a blue 1955 Chevrolet two door sedan. The trunk was open and there were tools scattered around the vehicle. Upon examination of the car the deputy failed to find any Certificate of Registration. He did notice that the identification number plate was missing from the doorpost. This occurred approximately four hours prior to the time when Gregory reported his car stolen. However, Deputy Leibrandt placed the appellant under arrest for vehicle taking. Later that day Gregory was called to the Police Department where he identified the car in which the appellant had been found. Upon his identification the Police Department released the automobile to Gregory.

Appellant claims error in that there was no evidence connecting the object alleged stolen in the affidavit and the object found in the possession of the appellant and further

that there was no evidence connecting appellant with the theft.

There is ample evidence in this record from which the trier of fact could reasonably find that the vehicle which Gregory reported as having been stolen and the vehicle in which the appellant was found were one and the same vehicle.

The testimony of Deputy Leibrandt that the identification plate had been removed from the doorpost of the vehicle coupled with testimony of Gregory that he had removed that plate himself in doing body work on the car, and the fact that Gregory came to the garage where the police had brought the car after the arrest of the appellant, identified the car and obtained it from the police, is all ample evidence from which the trier of fact could reasonably find that the vehicle had been properly identified.

To support his argument on lack of identification the appellant cites the case of *Finch* v. *State* (1967), 249 Ind. 122, 12 Ind. Dec. 22, 231 N. E. 2d 45. However, the *Finch* case would seem to refute appellant's argument more than support it. In the *Finch* case the stolen goods were of such a nature as to be almost impossible to identify, being sirloin steaks and packages of cigarettes, whereas in the case at bar the automobile in question was easily identified by the owner and the arresting officer.

The *Finch* case also answers appellant's second contention that there was no evidence connecting the appellant with the taking of the car. The testimony of Deputy Leibrandt that the appellant was asleep in the car at the time he was discovered was certainly evidence from which the trier of fact was justified in finding that the appellant was in sole possession of the automobile at the time of his arrest.

In the *Finch* case at page 124 the Court quoted a previous decision as follows:

> ". . . . *Assuming that the goods found with him were the actual goods stolen, the unexplained possession of the*

*stolen goods is sufficient to sustain a conviction for larceny. Gilley et al. v. State* (1949), 227 Ind. 701, 88 N. E. 2d 759."

The appellant took the witness stand on his own behalf and testified that he had been riding with other persons in an automobile the evening before and that one of them hit him on the head and the next thing he knew he awoke in the stolen automobile. However, we have repeatedly stated that we will not weigh conflicting evidence. It was up to the trier of fact to determine the truth of the evidence. *Scott* v. *State* (1968), 250 Ind. 532, 13 Ind. Dec. 313, 234 N. E. 2d 474.

We would point out that the appellant was not convicted of theft but of the offense of obtaining and exerting unauthorized control over a motor vehicle under circumstances not amounting to theft. Certainly, the evidence which was before the trial court was sufficient to prove that the appellant did in fact obtain and exert unauthorized control over the car in question whether or not he did so in such a manner as to amount to a theft.

Appellant also claims that the trial court wrongfully considered the past criminal offenses of the appellant in reaching its decision in that the judge did not confine the use of such information, to testing the credibility of the accused, but in fact used evidence of prior convictions to determine the guilt of the appellant in the instant case. With this we do not agree. The findings of the trial court announced at the time of rendering his decision indicate that he was finding the appellant guilty from the evidence submitted in the case. He merely noted that he found the appellant's explanation of his presence in the car unbelievable. He did make reference to statements by the parole officer that the appellant had an alcohol problem; however, the court specifically found that there was no evidence in the case that the appellant was so intoxicated that he did not know what he was doing. We find nothing in the record nor has the appellant shown us anything from the record to indicate the trial court used ap-

pellant's prior record to prove any of the elements of the crime charged. It was certainly proper for the trial judge to take into consideration the appellant's prior record in determining his credibility as a witness. Where, as here, the appellant takes the witness stand in his own behalf this Court has stated that his credibility like that of any other witness is a proper subject of interrogation. If that interrogation indicates unreliability of the witness, the trier of fact is entitled to take that into consideration. *Wells* v. *State* (1959), 239 Ind. 415, 158 N. E. 2d 256. There was ample evidence before the trial court to sustain the conviction in this case.

The trial court is, therefore, affirmed.

Hunter, C.J., and Arterburn, J., concur; DeBruler, J., dissents with opinion in which Jackson, J., concurs.

### DISSENTING OPINION

DeBRULER, J.—I dissent and would reverse this judgment as contrary to law in that, in arriving at its verdict, the trier of fact used appellant's exercise of his constitutional right to remain silent against him in violation of the Indiana Constitution, Art. 1, § 14, which reads as follows:

"No person shall be put in jeopardy twice for the same offense. No person, in any criminal prosecution, shall be compelled to testify against himself."[1]

This occurred when the trial court used against appellant the fact that he did not tell the police at the scene of the arrest the story he told in court. The pertinent facts are as follows:

---

1. The Fifth Amendment to the United States Constitution reads as follows:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The arresting officer, Deputy Sheriff Leibrandt, was sent to the scene to investigate an automobile parked on a county line road. Upon arrival the officer found the car parked in the road, tools strewn about, and the appellant asleep or passed out behind the wheel. The officer noted the Vehicle Identification Number plate had been removed and was unable to find a vehicle registration. Thereupon the appellant was placed under arrest for pre-vehicle taking. At trial, on cross-examination, the arresting officer testified in part as follows:

"Q. Did you have a conversation with him?
A. Yes, sir.
Q. Did you advise him of his rights?
A. Yes, sir, we did.
Q. What did he tell you and what did you tell him?
A. You mean when we were speaking to him? At the scene?
Q. Yes.
A. He told us that he did not know who the vehicle belonged to and I believe, to the best of my knowledge, he also stated that he did not know how he had arrived at that location.
Q. That was his story to you?
A. Yes, sir."

The appellant himself took the witness stand and related substantially the following story:

Appellant went to the College Tavern approximately 9:00 p.m. October 14, 1967, where he began drinking beer and whiskey with three men and a woman. This drinking continued until approximately 2:00 a.m., October 15, at which time he left the tavern with the three men and the woman. They got in a green Pontiac and drove around. Someone hit him on the head and he remembered nothing further until he awoke in the stolen Chevrolet. Appellant did not know the names of the three men or the woman. Three days after his arrest appellant had a severe bump on his head.

Upon cross-examination the following dialogue occurred between the prosecutor and the appellant.

"Q. Why didn't you tell the Sheriff about the robbery, why didn't you report it to the Police that you had been robbed?

A. Cause I was on parole at the time and I was waiting saving it to tell my parole officer.

Q. Why didn't you tell the Sheriff that some men put you in a car, took you out and hit you on the head?

A. It wouldn't have done no good at the time.

Q. That isn't answering my question, why didn't you tell the Police or the Sheriff?

A. I don't know, sir.

Q. You didn't tell him because it isn't true, that's why you didn't tell him, you didn't think of it in time, did you? Now you got a chance to tell the truth. Well, so much for that. Now, you said a while ago. . . ."

Parole Officer Morose testified that he had believed appellant's story as was related to Morose some three days after arrest. This story was somewhat dissimilar to that related by appellant at trial. On cross-examination of Morose the prosecutor attempted to impugn the story of the appellant by the following questions:

"Q. Did he tell you that he had overlooked telling the Sheriff the same kind of a story?

A. I didn't question him about what he had told the Sheriff.

Q. If the Sheriff would take the stand and deny that he discussed any of those things with him, would you be inclined to disbelieve the Sheriff?

A. Of course, I have had quite a bit experience with the Sheriffs and I hold high esteem for every Sheriff. I don't question any. . . ."

Parole Officer Rogers, in testifying for the appellant, was cross-examined as follows:

"Q. Did he tell you that he had not said anything to the arresting officers or to the detective assigned to the case with reference to the alleged robbery?

A. I don't recall that he mentioned what information he had given to them, he gave the information to me the story to me.

Q. Well, in your opinion as an investigator, as Mr. Erbecker said you are, had this really happened that he would have disclosed it to the arresting officer and to the detective?

A. I would have thought, yes eventually, in the state he was in I would assume he was pretty confused, if he was as drunk as I think he was and having been asleep."

It is obvious that the cross-examination of the two parole officers and the appellant was designed to impeach and discredit the defense testimony of the appellant by pointing to the fact that the appellant did not tell that story to the police at the time of arrest.

In his summation, in furtherance of his strategy to show the defense to be a fabrication, the prosecutor enlarged upon the appellant's failure to tell the police the story he told at trial. That summation reads in part:

". . . but it would seem to me most likely that if a man had a defense of being robbed and thrown into a car that he couldn't have told the officers about it fast enough. That he wouldn't have waited until three days to call a parole officer and say they charged me with a theft but actually I was robbed, yet it was that Officer Ausbrooks went down, tried to talk to him the next day and he rejected him entirely, wouldn't discuss anything about it, and it seems to me that had he had the defense of being robbed and thrown into the car that there would have been proper opportunity to tell Officer Ausbrooks about it."[2]

In weighing the appellant's testimony and his credibility the trial court actively considered the appellant's failure to

2. There was no evidence introduced to the effect that Officer Ausbrooks ever talked to the appellant or that appellant refused to talk to Ausbrooks. The prosecutor therefore, was commenting on evidence of the appellant's silence which was not even in the record.

tell his story to the police immediately upon arrest as is evidenced in the statement made by the court in explaining his finding.

> *"THE COURT:* Well, this thing was heard sort of piece-meal but I still remember the testimony, it was very definite proof that the car was stolen, defendant was found in possession of the car within a day of the theft itself. I realize the man was on parole and I think he well knew the situation he was in the night that he was found in that automobile, or the next day. The thing that stands out in my mind is here you have a police officer who apparently observed him at the time that he arrested him, saw no evidence of a fight, no cuts on his head and this was the police officer's testimony, and as I have kept my notes here I find that two or three days apparently passed between the time that he was arrested and the time the parole officers saw him so I am not really too impressed with the bump on his head. Another thing here is that this man didn't tell his own parole officer the truth immediately. He waited and *it would just seem to me that if he, in fact, had been hit on the head and had been robbed, this would have probably reasonably been the first thing that he would have told the police officer. I just don't believe his story.* Here the parole officers, both, have indicated that this man has a drinking problem and the last parole officer stated that the alcohol caused him to be in the car and apparently in the other thefts alcohol has been involved, and I think you know as well as I do that intoxication sometimes is a defense to a specific intent crime, yet there is no evidence here that this man was so intoxicated that he didn't know what he was doing. I think that the State has proven their case beyond a reasonable doubt so for that reason there will be a finding of Guilty and a pre-sentence investigation, ordered. We will set sentencing for May 28th, at one o'clock." (Emphasis added.)

It is this reliance by court upon failure to tell his story to police in arriving at his finding of guilty that is assigned as error on this appeal. The appellant contends that the trial court's use of his silence at time of arrest was a violation of his constitutional rights against self-incrimination as guaranteed by the Indiana Constitution, Art. 1, § 14.

The question thus presented is whether the silence of the accused at the time of arrest or during any period of custody

can be used at trial to impeach the defense presented by the accused. The answer must be given in the negative.

There can be no doubt that the defendant's silence, save for two statements, at time of arrest must be considered as a valid invocation of his constitutional right against self-incrimination. The arresting officer testified on cross-examination that the appellant, after being warned of his rights, told him only that he did not know whose car it was and that he did not know how he arrived at that location. Since appellant did not raise objection to these two statements, we will assume that they were made pursuant to a valid waiver. We must also assume that the appellant's subsequent silence and his failure to disclose anything else to the arresting officer was a valid exercise of that constitutional right. *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. It is well recognized that an accused can effectively waive this right provided such waiver is made knowingly, voluntarily, and intelligently. However, as the United States Supreme Court in *Miranda, supra,* said:

> "The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questions." 384 U. S. at 445.

In the case at hand, therefore, the fact that the appellant did make two statements to the arresting officer did not preclude him from thereafter invoking his constitutional right to remain silent. Nor is an accused required to affirmatively assert that right. His subsequent silence therefore can only be interpreted as a valid exercise of his constitutional right against self-incrimination as guaranteed by Art. 1, § 14 of the Indiana Constitution and the Fifth Amendment to the United States Constitution. Both of these constitutional provisions provide that no person may be compelled to be a witness against himself in a criminal prosecution and the scope of the

two provisions is the same. *Malloy* v. *Hogan* (1963), 378 U. S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653.

Comment by the prosecutor on the fact of a defendant's failure to testify is a violation of those constitutional provisions and is reversible error. *Griffin* v. *California* (1965), 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106; *Keifer* v. *State* (1933), 204 Ind. 454, 184 N. E. 557. There is also an Indiana statute which specifically prohibits any comment or reference to the defendant's failure to testify. Burns Ind. Stat. Ann. § 9-1603 provides in part:

> "But if the defendant does not testify, his failure to do so shall not be commented upon or referred to in the argument of the cause, nor commented upon, referred to, or in any manner considered by the jury trying the same; and it shall be the duty of the court, in such case, in its charge, to instruct the jury as to their duty under the provisions of this section." Acts 1905, ch. 169, § 235.

Comment by the prosecutor in violation of the above statute has been held to be reversible error. *Knopp* v. *State* (1954), 233 Ind. 435, 120 N. E. 2d 268; *Davis* v. *State* (1925), 197 Ind. 448, 151 N. E. 329. In *Davis* v. *State, supra,* this Court reversed the appellant's conviction because of the error incurred when State's counsel directly *alluded* to the appellant's failure to testify.

The rationale of these cases is that a defendant may not be penalized for exercising his constitutional right against self-incrimination.

It is conceded that the above cases refer only to comment made in regard to the defendant's failure to testify at the trial and this in itself does not prohibit comment in regard to defendant's silence at the time of arrest. However, I note that at the time of the passage of this statute (1905), the concept of the right against self-incrimination extended only to the right not to testify at the trial and that was the only issue presented in those cases. This right against self-incrimination has since been significantly expanded. The Supreme Court in *Miranda, supra,* said:

"Today, then, there can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." 384 U. S. at 467.

It is well settled then that adverse comment cannot be made upon an accused's failure to testify at trial and equally well settled that the privilege against self-incrimination is no longer confined to a right not to testify at trial but rather extends to any and all points of the criminal proceeding including time of arrest. I turn then to the question of whether a prosecutor may use a defendant's exercise of the privilege against the defendant at trial, when the exercise of the privilege was made prior to trial.

The United States Supreme Court in *Miranda, supra,* answered the above question quite clearly when it said:

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." 384 U. S. at 468.

See also *Griffin* v. *California, supra.* The above language of the court quite explicitly prohibits the introduction of the accused's silence into evidence. Whether that silence is used by the State to infer guilt or to impeach the testimony of the defendant it is nonetheless penalizing the defendant. The Fifth Amendment privilege against self-incrimination would be rendered useless if by the exercise of that privilege the prosecution could infer guilt or impeach the later testimony of the accused. The United States Supreme Court in *Slochower* v. *Board of Education* (1956), 350 U. S. 551, 76 S. Ct. 637, 100 L. Ed. 692, was moved to admonish:

"At the outset we must condemn the practice of imputing a sinister meaning to the exercise of a person's constitutional right under the Fifth Amendment. * * * The privi-

lege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury." 350 U. S. at 557.

This being an issue of first impression on this Court it is prudent to review the decisions of other jurisdictions which have faced the same issue.

In *Fowle* v. *United States*, 410 F. 2d 48 (9th Cir. 1969), the defendant was convicted of the illegal possession and sale of certain narcotic drugs. The defendant took the witness stand in his own defense asserting that until the moment of arrest he was under the impression that his participation in the sale was in the interest of, and in association with the Government's law enforcement officials. Upon cross-examination the prosecution elicited from the defendant the fact that he did not tell this story to the arresting agents. In summation the prosecutor commented effectively upon that testimony by stating that the jury in determining the plausibility of the defendant's story should consider that the defendant did not tell his story to the arresting officers as would seem logical for any innocent man to do. The Ninth Circuit Court of Appeals in reversing held that the prosecution's use of the defendant's silence violated the defendant's right against self-incrimination guaranteed by the Fifth Amendment in that to permit one's shielding of himself with that right to be converted into a weapon against him drains that right of much of its significance. That court also held that considering the prosecution's use of the defendant's silence that as a matter of pure evidentiary law a reversal would be required since that silence is not sufficiently inconsistent with later explanation and testimony as to be of any probative value to impeach that testimony.

In *Fagundes* v. *United States*, 340 F. 2d 673 (1st Cir. 1965), the defendant upon being arrested for bank robbery asserted his rights after advisement by replying that he did not want to say anything but wanted to see a lawyer. At his trial

the defendant took the stand and attempted to establish an alibi. On cross-examination the prosecutor asked the defendant why he had not protested his innocence at the time of arrest instead of refusing to talk and asking for a lawyer and why he had not asserted his alibi when he was brought before a commissioner. While recognizing that such cross-examination was being used for purposes of impeachment rather than proof or inference of guilt the First Circuit Court of Appeals held it was nonetheless inadmissible:

> "When one takes the stand in his own defense he of course puts his credibility as a witness in issue. Nevertheless we think it reversible error to permit evidence of refusal to talk and of request for counsel on arrest to be used for the purpose of impeachment. In the first place such evidence is ambiguous. Fagundes's words when arrested can as well be taken as indicating reliance upon constitutional rights as supporting an inference that his alibi was an afterthought. There is nothing to indicate which interpretation is more probable. In the second place we think it reversible error to permit a jury to draw any inference adverse to one accused of crime from his reliance upon his constitutional right to silence and to the advice of counsel. The right to silence on arrest is akin to the right to decline to take the witness stand in one's own defense." 340 F. 2d at 677.

In *United States* v. *Arnold,* 425 F. 2d 204 (10th Cir. 1970) the interrogating policeman gave a succinct negative answer to the prosecutor's inquiry as to whether the defendant had said anything following the *Miranda* warnings. The court viewed this testimony as harmless, being of doubtful probative value. However, a reversal of defendant's conviction was necessary because the prosecutor in summation argued that if the defendant was in fact conducting an innocent experiment and not unlawfully manufacturing drugs, that he would have told the officers that his arrest was a mistake. The prosecutor had converted what was an apparently harmless reference into a prejudicial one. The Tenth Circuit Court in reversing held that error to be so plain, fundamental and

serious as to deserve notice although raised for the first time on appeal.

In *Hunt* v. *Cox*, 312 F. Supp. 637 (E. D. Va. 1970), the habeas corpus petitioner sought to overturn his conviction in a West Virginia State Court on the ground that his silence at time of arrest had been used against him. At the trial the defendant took the stand and gave an alibi as his defense. The prosecutor attacked this alibi on cross-examination by asking the defendant whether he had offered the alibi to the arresting officer. The defendant then claimed he had told one officer his alibi. The defense counsel thereupon objected to this testimony and the judge instructed the jury that the defendant was within his rights in refusing to answer any questions at time of arrest. The arresting officer then testified on rebuttal that defendant made no statement whatsoever. In summation the prosecutor took full advantage of this disclosure by arguing that an innocent man would state his alibi to police right away. Judge Merhige, in setting aside the conviction, noted that the admissibility of evidence depends on the purpose for which it is offered. The evidence of defendant's silence at time of arrest may be deemed as fair rebuttal to the defendant's claims that he related the alibi to the arresting officer. But in summation the prosecutor used that testimony for a much broader purpose, as evidence of guilt.

The rule in *Griffin, supra,* prohibits adverse comment by the State upon the defendant's exercise of his right against self-incrimination by failure to testify at trial. The *Miranda* case extends the right against self-incrimination to the time of arrest. The cases reviewed above merely extend the *Griffin* rule in light of *Miranda.* The common thread that runs through these decisions is that the State cannot adversely use at trial the fact that the defendant did, at some time prior to trial, exercise his constitutional privilege against self-incrimination.

I believe that in so holding these courts have correctly interpreted and applied *Griffin* and *Miranda*. The very essence of the privilege against self-incrimination is that the accused is permitted to stand mute clothed in a presumption of innocence. To permit the exercise of that privilege to be used adversely against the defendant would be to reduce it to a nullity.

I would hold, therefore, that when the accused at the time of his arrest or any time thereafter, invoked his constitutional right against self-incrimination, the exercise of that right may not be introduced at trial unless a necessary part of the description of the arrest. The exercise, even if admitted as incidental to testimony concerning the arrest, may not be commented upon by the prosecutor or the court, may not be the subject of enlargement through cross-examination or other evidence by the prosecution, and may not be used by the trier of fact to infer guilt or discredit the testimony of the accused.

In this case the trial court as trier of fact used the appellant's failure to offer his alibi to the police at the time of arrest as the reason for disbelieving appellant's story which story if believed would have exonerated appellant. This was reversible error.

I would reverse the judgment of the trial court with instructions to grant appellant's motion for new trial.

Jackson, J., concurs.

NOTE.—Reported in 265 N. E. 2d 31.