Frank Randall THOMAS, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–1279A397.

Court of Appeals of Indiana, Fourth District.

July 23, 1981.

Harriette Bailey Conn, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Frank Randall Thomas was convicted of automobile theft, after a jury trial, and sentenced to two years in prison. Specifically, Thomas was charged with knowingly exerting unauthorized control over a 1966 Pontiac station wagon belonging to Buford Pearson. Thomas appeals his conviction raising the following issues for review:

1) Whether the evidence was sufficient to sustain the jury's verdict?

2) Whether the trial court erred in refusing Thomas's request to read into evidence the deposition of. a subpoenaed witness who failed to appear?

3) Whether questions propounded by the prosecution on cross-examination of Thomas improperly suggested Thomas had engaged in prior criminal activity?

4) Whether the trial court erred in refusing Thomas's tendered final instruction concerning mere possession of stolen property?

We affirm.

### FACTS

The evidence most favorable to the State supporting this charge reveals the following. At approximately 3:30 A.M. on May 25, 1978, Katrina and Steven Cooper were sitting in their car, waiting for a bus, outside the Greyhound station in Lafayette, Indiana. Katrina saw three men, all meeting the same general description, walk past the Coopers and proceed south on Fourth Street. As he walked, one of the men repeatedly attempted to open the doors of several cars, while the other two men walked alongside. The man was finally successful in opening a door on the passenger side of a red station wagon with a white top parked in a lot approximately a block and a half from where the Coopers were parked. Katrina was unfamiliar with the downtown area and testified the station wagon was in a parking lot approximately

one and a half blocks south of the bus station. She observed the man open and close the hood, enter the car and, after a short lapse of time, drive the vehicle off the lot in an erratic manner. She analogized the vehicle's movements to the jerky motions caused by a driver operating a manual transmission for the first time. Katrina only saw this one man enter the car.

Katrina directed Steven's attention to the man as he was attempting to open the doors on various cars in what Steven described as "a parking lot a bit to the south of us and across the street." Steven also witnessed the man's difficulty in starting the station wagon and its erratic exit from the lot, first in a northerly direction for a short distance and then to the east on a street or alley until it was out of view.

Steven called the police, told the officer he believed he had just witnessed a car theft, and described the vehicle's direction. The police informed Steven they already had received a similar report and, according to the officer on the phone, the police had given chase and a wreck had ensued before and during Steven's call.

Steven had spoken with Officer Johnson, the shift commander. Johnson testified that the parking lot referred to by the Coopers was the lot across from the Fowler Hotel on the northeast corner of Fourth and Ferry. Officer Smith testified that moments before Steven's report, he had received an anonymous call from a woman concerning an incident at Fourth and Ferry Streets involving a red station wagon. The testimony did not reveal any further details of this report.

In response to this anonymous call, Officer Reeves and Officer Emberton were dispatched by radio to the vicinity of the parking lot. Upon approaching the area, which was only a few blocks from the police station, Officer Reeves immediately saw a white-over red Pontiac on Fifth Street between Main and Ferry, approximately one block from the Fowler parking lot, and gave chase at speeds up to 90 miles per hour. The station wagon finally crashed into two parked cars approximately one

block from defendant Thomas's residence. The dispatch did not include a license plate number but described the vehicle as a red station wagon taken from the vicinity of the Fowler parking lot. Reeves approached the car and found Thomas lying on the front seat with his feet under the steering wheel. Reeves handcuffed Thomas as Officer Emberton arrived and Thomas was transported to the police station at approximately 4 A.M. Officer Reeves testified that by the time he returned to the station, Officer Metzger had obtained the license plate "on the stolen car and it matched the one that [he] had taken the subject out of . . . ."

Buford Naomi Pearson, the alleged owner of the stolen vehicle, testified she resided on Ferry Street in the Fowler Apartments and owned a four door 1966 red Pontiac station wagon with a white top. Pearson had parked her automobile in the Fowler parking lot on the corner of Fourth and Ferry and had last seen it there on the evening of May 24th, 1978. She testified she had not authorized anyone to use her automobile. At approximately 4 A.M. of May 25th she received a phone call from the Lafayette police and, a few minutes later, signed a stolen car report brought over by Officer Metzger. Pearson next saw her car two days later in a wrecked condition.

## DECISION

### Sufficiency of the Evidence

The pertinent portion of the information charging Thomas with theft[1] alleged as follows:

"That on or about the 25th day of May, 1978, in Tippecanoe County, State of Indiana, Frank Randall Thomas did knowingly exert unauthorized control over property of Buford Pearson, to wit: a 1966 Pontiac station wagon by taking it without the consent of Buford Pearson or

any authorized agent of Buford Pearson with intent to deprive Buford Pearson of the value and use thereof."

Thomas contends the State failed to prove Pearson owned the vehicle in which he was found. We disagree and find the evidence and reasonable inferences support the jury's determination.

■ We acknowledge every criminal conviction must be supported by evidence upon each material element of the crime charged, *Dew v. State*, (1978) 268 Ind. 17, 373 N.E.2d 138 and it is well settled that the name of the owner or possessor of property alleged to have been stolen is a material allegation which must be proven beyond a reasonable doubt. *Buckley v. State*, (1970) 254 Ind. 621, 261 N.E.2d 854; *Smith v. State*, (1975) 167 Ind.App. 428, 339 N.E.2d 118. However, a conviction may be sustained upon circumstantial evidence alone, *Willard v. State*, (1980) Ind., 400 N.E.2d 151; *Harris v. State*, (1981) Ind. App., 416 N.E.2d 902, and when we review such a conviction we need not examine the evidence to determine whether it is sufficient to overcome every reasonable hypothesis of innocence. *Bruce v. State*, (1978) 268 Ind. 180, 375 N.E.2d 1042, *cert. denied*, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662. Rather, we need only determine whether reasonable inferences supporting the jury's verdict may be drawn from the evidence. *Id.*

In the instant case we find such an inference supports the jury's conclusion that Thomas was apprehended in the 1966 red Pontiac station wagon belonging to Pearson. Pearson testified she owned such an automobile on the date in question and had last seen it on the eve of the theft alleged herein, parked in a rented space in a parking lot located across the street from her residence on Fourth and Ferry. The Coopers testified they saw a vehicle, similar to the one described by Pearson as belonging

---

1. Ind.Code 35–43–4–2 *as amended by Acts 1977, P.L. 340, sec. 45* reads as follows: "A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." Ind.Code 35–41–1–2 states: "Property is that 'of another person' if the other person has a possessory or proprietary interest in it, even if an accused person also has an interest in that property."

to her, being driven out of a parking lot in the same vicinity at approximately 3:40 A.M. of the morning after Pearson last saw her vehicle where she had left it. The driver of the car had attempted entry of several other vehicles on the same street, finally entered the passenger side of the vehicle in question, engaged in extended suspicious activity before starting the vehicle, and drove the car off the lot in an erratic manner. Approximately 20 minutes after this activity was witnessed by the Coopers, Pearson signed a stolen car report. Since she had not authorized anyone to use her auto, we believe this evidence supports a reasonable inference that Pearson's 1966 red Pontiac station wagon with a white top was stolen on May 25, 1978 at approximately 3:40 A.M.

■ The evidence also sustains a finding that Thomas was apprehended in a stolen vehicle. In responding to a report of the possible theft of a red station wagon, the police spotted a vehicle meeting that description. When the police approached the car in question, the driver took flight in the automobile at speeds up to approximately 70 m. p. h. to 90 m. p. h. although the police were pursuing with the red lights flashing and the siren sounding. Immediately after the suspect vehicle finally crashed, Thomas was found with his legs underneath the steering wheel and lying across the front seat. Although the engine was running, there was no key in the ignition. Small scratches were found around the ignition, and a small pen knife was found on the front seat which an officer used to insert in the ignition and turn off the engine. Officer Reeves testified Officer Metzger informed him he had obtained the license plate number on the stolen car and it "matched the one" in which Thomas was found. This latter evidence on the matching plates was hearsay but it was not objected to at trial, and may therefore be considered by both the finder of fact and this reviewing court as probative evidence on the essential elements of the offense. *Turentine v. State*, (1979) Ind.App., 384 N.E.2d 1119. From this evidence we believe a jury could reasonably conclude the

vehicle in which Thomas was found was stolen.

■ Additional evidence also supports a finding that Pearson's stolen auto and the stolen auto in which Thomas was found were the same automobile. First, the vehicle in which Thomas was found was a red Pontiac station wagon with a white top, meeting the same description as Pearson's automobile. Secondly, the police received the initial report and were dispatched at approximately 3:44 A.M. They approached the area from which the Pearson vehicle had been stolen approximately one minute later and spotted the vehicle in which Thomas was found approximately one block from the Fowler lot. The individual who stole Pearson's automobile had difficulty driving it, apparently stalling the automobile everytime the clutch was released. This may well account for the fact that Thomas had progressed only a short distance within a few minutes. Without losing sight of the vehicle, the police gave chase until it was wrecked in a crash. Pearson testified she next saw *her* car in a wrecked condition. Given the proximity in time and place between the theft of Pearson's car and Thomas's apprehension, as well as the similarity in description including its wrecked condition, we hold the evidence was sufficient to sustain a finding that Thomas was apprehended in an automobile belonging to Buford Pearson.

■■ Thomas urges the identity of the automobile was not established by evidence of the license plate number. *See, e. g., Wainscott v. State*, (1970) 255 Ind. 107, 262 N.E.2d 633. We believe the testimony of Officer Reeves regarding matching plates was sufficient to establish that identity. However, even if we were to view Reeves's testimony on this issue as ambiguous, we note the circumstantial evidence outlined above was nevertheless sufficient. We first note that circumstantial evidence is generally sufficient to establish identity or ownership of stolen property, *Baker v. State*, (1928) 200 Ind. 336, 163 N.E. 268; *Shank v. State*, (1972) 154 Ind.App. 147, 289 N.E.2d

315; *see Bullitt v. State*, (1974) 161 Ind. App. 327, 315 N.E.2d 747, and cases uniformly support conviction for theft of an automobile where neither license plate numbers nor registration certificates are used to identify the vehicle as belonging to the person named in the information or indictment. For example, in the recent case of *Pitts v. State*, (1980) Ind.App., 410 N.E.2d 1387, (trans. pending), Pitts also challenged the sufficiency of circumstantial evidence to sustain his conviction for theft of an automobile by claiming the state had not shown the vehicle in his possession was the same vehicle stolen from the prosecuting witness, Mr. Bridwell. In declining Pitts's invitation to reweigh the evidence on this element, the Court held as follows:

"The testimony of Mr. Bridwell that appellant drove off from Bridwell's lot in Bridwell's 1969 four-door bronze Cadillac with a black vinyl roof and that the next time Bridwell saw 'his car' was when it was delivered to him from Leavenworth, Kansas, and officer Robinson's testimony that he found appellant in Leavenworth, Kansas, with a 1969 four-door bronze Cadillac with vinyl top, together with appellant's spontaneous statements that he intended to take Mr. Bridwell's car to New Mexico were sufficient evidence from which the trier of fact could infer appellant's guilt on this element beyond a reasonable doubt."

*Id.* at 1389–90. A similar challenge was advanced in *Shank v. State, supra*, where a police officer discovered Shank asleep in the back of a 1964 black Chevelle Supersport convertible with a white top and red interior. Approximately three weeks before, an automobile dealer had reported the theft from his lot of an automobile meeting the same description. Noting the dealer identified the car recovered by the police as the stolen car, the Court found the evidence was sufficient to sustain Shank's conviction. Finally, in *Howard v. State*, (1970) 255 Ind. 380, 265 N.E.2d 31, Howard claimed there was no evidence connecting the blue 1955 Chevrolet two door sedan alleged stolen in the affidavit and the blue 1955 Chevrolet two door sedan in which he was found

sleeping. Our Supreme Court sustained Howard's conviction:

"The testimony of [the arresting officer] Deputy Leibrandt that the identification plate had been removed from the doorpost of the vehicle [in which Howard was found] coupled with testimony of [the owner] Gregory that he had removed that plate himself in doing body work on the car, and the fact that Gregory came to the garage where the police had brought the car after the arrest of the appellant, identified the car and obtained it from the police, is all ample evidence from which the trier of fact could reasonably find that the vehicle had been properly identified."

*Id.* at 382, 265 N.E.2d at 32. From an examination of these authorities, it is apparent that proof of the registration or license number is not an indispensible requisite in establishing the identity of a stolen automobile. *Accord, Arnold v. State*, (1959) 239 Ind. 592, 159 N.E.2d 278; *Inman v. State*, (1945) 223 Ind. 500, 62 N.E.2d 627.

■ Moreover, proximity in time and place between the defendant's arrest and the theft has been recognized as a significant consideration in determining the sufficiency of the evidence to establish a vehicle's identity. In *Shelby v. State*, (1951) 229 Ind. 186, 96 N.E.2d 340, Shelby was convicted of taking a 1940 Tudor Ford belonging to a Mr. Devasier, as alleged in the charging affidavit. Shelby was found at approximately 11:00 P.M. on Waterworks Road behind the wheel of a 1940 Tudor Ford. The police had been called to the scene after Shelby had sideswiped another automobile. Approximately three hours earlier Devasier had reported the theft of his 1940 Tudor Ford, and when he recovered his car at an unspecified time he noted damage to the left front and rear fenders. Our Supreme Court agreed the evidence was insufficient to support a finding that the car in which Shelby was found belonged to Devasier, but noted several examples of evidence which might have reasonably supported such an inference:

"There is no evidence that the automobiles were the same color or that they were equipped with the same or similar accessories; that they carried the same license plate number; *that Devasier's car was recovered at or even near the point on the Waterworks Road where the appellant was apprehended*; that the car recovered by Devasier was the same car in which the appellant was found or even that there was only one accident involving a Ford Tudor automobile on Waterworks Road at about eleven o'clock that night. It is true that both left fenders of Devasier's car were damaged when the car was recovered, and the evidence shows that a 1940 Tudor Ford automobile being driven by appellant was involved in an accident on the Waterworks Road that night. The evidence does not show, however, that the car the appellant was driving sustained damage to the left fenders in the accident *or whether it was damaged at all*...." (Emphasis added.)

*Id.* at 188–89, 96 N.E.2d at 341. Thus, although the mere fact that the car in which a defendant is found meets the same general description of a stolen vehicle is insufficient proof of identification, other circumstances, including those relating to time and place, may lead to a reasonable inference supporting the conviction.

Such circumstances are presented in the case at bar. Thomas was found in a car meeting the same description as Pearson's auto within one block of the site of the theft and minutes after the theft occurred. Taken together with the other evidence presented, we find this was sufficient to identify the car in which Thomas was found as the Pearson vehicle.

*Refusal of Request to Read Deposition*

■ During the defense's case-in-chief, Thomas sought a continuance due to the failure of a witness to appear on June 27 at 1:30 P.M. as subpoenaed. On that date Thomas had allegedly received a phone call indicating the witness had gone to Chicago and would return later that evening. Thomas's attorney informed the court that he had previously told the witness he would probably not be needed until the morning of June 28. The cause was continued until the next morning when the witness was expected to return.

On the morning of June 28, Thomas again requested a continuance due to the continued inability to locate the subpoenaed witness. The court denied his motion and Thomas requested permission to read into evidence the witness's deposition which had been taken one week earlier by the State for discovery purposes. The State objected to the admission of the deposition without first affording it an opportunity to examine the testimony for possible evidentiary objections. Thomas's request was denied and he alleges error in this regard.

Thomas relies on two subsections of Ind. Rules of Procedure, Trial Rule 32(A)(3) as follows:

"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

. . . . .

(b) that the witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

. . . . .

(d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena;

. . .

. . . ."

Based solely on these two provisions, Thomas alleges he was clearly entitled to have the deposition read into evidence.[2] However, no citation to authority is provided and the issue is therefore waived. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

■ Thomas has waived this issue in several additional respects. We first note

2. Thomas does not argue in his brief that the trial court erred in denying his motion for a continuance which he admits "may be within the discretionary powers of the court," but only argues error in the refusal to admit the deposition into evidence.

the admission of depositions into evidence is within a trial court's discretion and therefore its ruling on such a request can not be disturbed except upon a showing of an abuse of such discretion. *Wells v. Gibson Coal Co.,* (1976) 170 Ind.App. 445, 352 N.E.2d 838; *City of Bloomington v. Chuckney,* (1975) 165 Ind.App. 177, 331 N.E.2d 780; Annot., 44 A.L.R.2d 768 § 2(b) (1955). Moreover, the appellant must demonstrate prejudice before this Court may find abuse of discretion or reversible error occurred at the trial level. *Wells v. Gibson Coal Co., supra.*

■ In the instant case, Thomas's brief does not contain any specific allegation of resulting prejudice and, in any event, the deposition in question was apparently never filed in the trial court, no representation was made to the trial court regarding the contents of the deposition, and the deposition is not included in the record on appeal. Without any means to determine the contents of the deposition, we are unable to determine whether prejudice resulted from its exclusion. Thomas has therefore failed in his duty to present a record on appeal sufficient for intelligent review of the question presented and the issue is therefore waived.[3] *State v. Kuespert,* (1980) Ind. App., 411 N.E.2d 435 (transcript of evidence not included in record); *Meeker v. Robinson,* (1977) Ind.App., 370 N.E.2d 392 (medical records); and *Fleming v. McClafflin,* (1891) 1 Ind.App. 537, 27 N.E. 875 (suppressed portions of deposition).

*Prior Criminal Activity*

Thomas assigns error in a question propounded by the prosecution on cross-examination of Thomas, which he contends improperly implied prior criminal activity. On direct examination, Thomas had testified to his version of the events on the evening in question, contending he had been walking home in an intoxicated condition and accepted a ride from a stranger. On cross-ex-

amination the following exchange took place between the prosecutor and Thomas:

"Q Did you say anything to [the stranger] except where you wanted to go?

A No, just where I wanted to go, and then when the police got behind us, I tried to get him to pull over.

Q Why did you try to get him to pull over?

A Because the police were behind us.

Q You always do everything—?

A And he was going fast and he was scaring me.

Q Do you always do everything the police ask you to do?

MR. KATZ [Defense Attorney]: I'm going to object, Your Honor. The question is irrelevant and immaterial.

THE COURT: That's overruled.

Q *Do you always do everything the police ask you to do?*

A I don't know what you mean.

MR. KATZ: We object, Your Honor. I have another objection. It's—the question infers previous contact, and I would object on that ground.

THE COURT: I don't think that—that's not the inference. The question is, do you do everything that the police ask you to do.

MR. KATZ: That's right, and that infers that he's had previous contact with the police, which I think is an improper and immaterial and irrelevant question.

THE COURT: In that context it is, but it's overruled.

A Yes, if I'm sober, I guess I usually do.

Q But you weren't sober that night, were you?

A No." (Emphasis added.)

■ Of course the general rule is that evidence of prior offenses is inadmissible unless it is relevant to some issue in the case such as intent, motive, plan, identity or

---

**3.** In his brief Thomas also appears to argue the exclusion of the deposition denied him the constitutional right to compulsory process. He has also waived this argument by failing to cite any authority and by failing to raise this argument in his motion to correct errors. A.R. 8.3(A)(7).

knowledge. *E. g., Schnee v. State,* (1970) 254 Ind. 661, 262 N.E.2d 186. We do not agree with Thomas, however, that the question disputed here carried such an implication. The question may have implied Thomas had previous contact with the police, but such an implication is not necessarily tantamount to prior criminal activity. Ordinary people in conducting their everyday affairs may encounter police officers in a variety of innocuous situations. For example, an individual may be subjected to police direction in traffic or pedestrian control, but the normal activity which results in such encounters is not criminal in character. Given the context of the question we do not believe it presented an improper inference.

 Furthermore, even assuming the question implied prior criminal activity, we do not find such an implication was prejudicial. After the above exchange, but during his case in chief, Thomas elicited testimony on direct-examination of another witness which revealed Thomas had been arrested several times for intoxication. This testimony was apparently elicited in an attempt to corroborate Thomas's version of the events that evening. It is well established that any error in the admission of testimony is waived and rendered harmless by the subsequent admission of the same facts by the defendant. *United States v. Silvers,* (7th Cir. 1967) 374 F.2d 828, *cert. denied,* 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189; *Page v. State,* (1979) Ind., 395 N.E.2d 235; *Crump v. State,* (1972) 259 Ind. 358, 287 N.E.2d 342. For example, in *Hicks v. State,* (1979) Ind., 397 N.E.2d 973, the defendant claimed the trial court erred in permitting an informant to testify regarding previous drug transactions with defendant. In denying the existence of prejudicial error, our Supreme Court commented that the defendant later testified himself regarding previous drug transactions with the informer. In *French v. State,* (1977) 266 Ind. 276, 362 N.E.2d 834, the defendant similarly alleged prejudicial error based on responses elicited from prosecution witnesses regarding the defendant's prior criminal record. Noting the defendant had also tes-

tified to serving a sentence for rape, the Court held that "[r]eversal may not be predicated upon the erroneous admission of evidence when evidence having the same probative effect is admitted without objection or contradiction." *Id.* at 284, 362 N.E.2d at 839. Assuming, *arguendo,* the question in the instant case was improper, we find the subsequent testimony elicited by Thomas rendered the alleged error harmless.

*Refusal of Tendered Instruction*

 Thomas alleges error in the trial court's refusal of his tendered final instruction No. 1 which read as follows:

"The mere fact that a defendant had in his possession property alleged to have been stolen, is merely a fact or circumstance which tends to show guilt. Of itself it is not sufficient to prove that he committed the crime. If the defendant has explained satisfactorily how he came into possession of the alleged stolen property and from which explanation, when considered with all the evidence in the case, you are not convinced beyond a reasonable doubt that he participated in the crime, then it is your duty to return a verdict of not guilty."

We find the trial court did not err in refusing this instruction since it is a misleading and incomplete statement of the law and invades the province of the jury.

A correct statement of the law is contained in *Gann v. State,* (1971) 256 Ind. 429, 269 N.E.2d 381, a case upon which Thomas heavily relies. The instruction approved in *Gann* was as follows:

"The *unexplained, exclusive* possession of a defendant of *recently* stolen property is a circumstance which *may* be considered, along with the other facts and circumstances of the case, in determining the guilt or innocence of the accused. However, the mere possession of stolen goods, standing alone, is insufficient to support a conviction, and the defendant cannot be convicted on the basis of evidence of mere possession of stolen goods alone.

If you should find from the evidence, beyond a reasonable doubt, that a burglary was in fact committed on the premises involved in the case, and that within a short period of time thereafter the defendant himself or with others was found in the unexplained, exclusive possession of property identified by the evidence as that stolen from the burglarized premises, you may consider such circumstance in arriving at your verdict in this case. However, no presumption of guilt of burglary is made or arises against a defendant merely by reason of his exclusive possession of goods which have been unlawfully and burglariously taken within a short period of time beforehand, if such be the case. Proof of the commission of the offense must be made beyond a reasonable doubt by the State, and the defendant has no burden to account for or explain for his possession of the goods, but the burden of proving his guilt beyond a reasonable doubt rests entirely upon the State, and you would not be warranted in finding the defendant guilty unless all of the elements of the offense charged have been proved by the evidence, of whatever class it may be, beyond a reasonable doubt." (Emphasis added.)

*Id.* at 433, 269 N.E.2d at 383–84. As emphasized in the *Gann* instruction, a defendant's possession of stolen property [4] is only one factor which a jury *may* consider on the question of guilt. On the other hand, the instruction tendered by Thomas, stating that possession of allegedly stolen property is a fact or circumstance which "tends to show guilt," appears to *require* a jury to consider such evidence as an indication of guilt, at least in the absence of a "satisfac-

tory" explanation by the defendant. Such has clearly not been the law in Indiana since our Supreme Court's decision in *Dedrick v. State*, (1936) 210 Ind. 259, 2 N.E.2d 409.

In *Dedrick* the Court premised a finding of reversible error on the giving of the following instruction:

"If the State of Indiana has proved that the property described in the affidavit was stolen, and that such property was, after the larceny, found in the exclusive possession of the defendant, then the law imposes upon him the burden of accounting for his possession and showing that such possession was innocently acquired, and if he fails to do so or gives a false account of his possession, the presumption arises that he has unlawfully acquired the possession of such property."

*Id.* at 260, 2 N.E.2d at 411. The Court explained that the error stemmed from the instruction's invasion of the jury's exclusive province to determine both the law and the facts in criminal cases and to determine the guilt or innocence of the accused from a consideration of all the facts and circumstances in the case:

"[A]ny instruction by the court which in any manner takes from the jury this exclusive duty, or which attaches weight to certain evidence, or which would in any manner place the burden upon the defendant to prove his innocence or introduce evidence to create a reasonable doubt in the minds of the jury, is erroneous."

*Id.* at 272, 2 N.E.2d 415–16. Similar instructions have been repeatedly condemned. *E. g., Underwood v. State*, (1977) Ind.App., 367 N.E.2d 4 and cases cited therein.[5] We

---

4. We note the instruction tendered by Thomas would also impermissibly require an implication of guilt from possession of property which has only been *"alleged"* stolen, rather than *proven* stolen beyond a reasonable doubt.

5. The improper instruction in *Underwood* read:
"The exclusive possession of stolen property soon after a theft has been committed, if not explained to the satisfaction of the jury, *may raise an inference that the person in possession of such stolen property is guilty of*

*the Theft* charged. The inference of guilt does not arise from the mere possession of the property stolen, but arises from the fact of its possession shortly after it has been stolen, *coupled with the absence of a satisfactory explanation, or of anything tending to show that such possession is or may be consistent with innocence."* (Emphasis in original.)

*Id.* at 4.

therefore find the instruction tendered by Thomas erroneously directed the jury to attach weight to evidence of Thomas's possession of the stolen automobile.

We find an additional parallel between the improper instruction discussed in *Dedrick* and the instruction tendered in the instant case. In Thomas's instruction there is a clear implication that a defendant must provide a "satisfactory" explanation of possession. In the event such an explanation is not provided the instruction implies possession alone may be sufficient to prove commission of the crime, or that the failure to explain is an indication of guilt. As emphasized in the *Gann* instruction quoted *supra*, the defendant has no duty or burden to explain possession; throughout the course of the trial, the State bears the burden of proving the defendant guilty on each element of the crime charged. *Dedrick, supra; Underwood, supra; Abel v. State,* (1975) 165 Ind.App. 664, 333 N.E.2d 848.

Affirmed.

YOUNG, P. J., and CHIPMAN, J., concur.