**Clyde PRYOR, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 71A03–0803–CR–124.

Court of Appeals of Indiana.

June 30, 2008.

Mark S. Lenyo, South Bend, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Shelley M. Johnson, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

CRONE, Judge.

Clyde Pryor appeals his conviction for class D felony auto theft, arguing the evidence is insufficient to support his conviction.[1] We reverse.

---

1. Other than the original, all copies of the State's appellee's brief are missing page two.

The evidence supporting the verdict shows that on or about October 5, 2006, South Bend police corporal Antwain Johnson responded to a dispatch between 2:00 p.m. and 10:00 p.m. regarding a stolen vehicle.[2] He met with the victim and took the report. The victim stated that "a male came by and wanted to use her car. She declined to give the car to him. And she said that the male took the keys to the car anyway's [sic], and left in the car." Tr. at 69.

On October 5, 2006, South Bend police officers Sheldon Scott and Frank Beigelbeck were conducting a traffic stop during the midnight shift, when Officer Scott saw a "black Suburban." *Id.* at 73. He "recalled that in the afternoon shift earlier as I was on my way into work, had been looking for a stolen black Suburban with a Wisconsin license plate. As it [the Suburban] passed, [he] saw that it had a Wisconsin license plate on it." *Id.* Officer Scott radioed a description of the vehicle and the license plate to the midnight shift sergeant, who confirmed that the vehicle "was the stolen Suburban from that afternoon." *Id.* at 74.

The officers stopped the vehicle and ordered the driver to exit the vehicle. Pryor got out and identified himself. Officer Scott asked him who owned the vehicle, and Pryor was unable to explain how he came into possession of the car.[3] Pryor was handcuffed and placed in Corporal Beigelbeck's car. A female passenger in the Suburban was also placed in Corporal Beigelbeck's car. While the two were in the police car, Pryor uttered, "I stole it." *Id.* at 84; Ex. 1 at 1:25:30. His comment was recorded on video.[4] The victim came to the scene and said, "He took it from me, he's been asking to borrow it and I keep telling him no, and he stole it." *Id.* at 88. The victim identified the Suburban as her vehicle. *Id.*

On October 5, 2006, the State charged Pryor with class D felony auto theft of Ambrosia Martin's 1997 Chevrolet SUV. Appellant's App. at 36. On November 1, 2007, a jury trial was held. Martin did not testify. No witnesses testified as to her identity. Pryor's recorded statement was admitted as State's Exhibit 1. Tr. at 84. The jury was instructed that to convict Pryor of class D felony auto theft, the State must prove beyond a reasonable doubt that Pryor knowingly exerted unauthorized control over the motor vehicle of Ambrosia Martin, a 1997 Chevrolet Suburban, with the intent to deprive her of any part of the vehicle's value or use. Appellant's App. at 14. The jury found Pryor guilty as charged. Pryor appeals.

█ *Pryor contends that the evidence is insufficient to support his conviction. Our standard of review is well settled:*

Upon a challenge to the sufficiency of evidence to support a conviction, a re-

---

2. Corporal Johnson testified that he took the report and met with the victim on October 5, 2006. Tr. at 69. However, the supplemental probable cause affidavit states that Ambrosia Martin contacted the police department on October 2, 2006, to report that her 1997 Chevrolet SUV had been stolen. Appellant's App. at 39.

3. The State asserts that Pryor stated, "A friend gave me the vehicle[,]" "I don't know their name[,]" "I don't have a phone number to get a hold of them." Appellee's Br. at 2–3,

5 (citing Officer Scott's testimony, Tr. at 76). However, Officer Scott testified that because a year had passed since the offense had been committed, he could not recall whether Pryor said these exact phrases but that these were the kinds of things people had said to him in the past. Tr. at 79.

4. After listening to the recording several times, we have been unable to conclusively establish the topic of conversation between Pryor and his passenger.

viewing court does not reweigh the evidence or judge the credibility of the witnesses, and respects the jury's exclusive province to weigh conflicting evidence. We must consider only the probative evidence and reasonable inferences supporting the verdict. We must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.

*McHenry v. State,* 820 N.E.2d 124, 126 (Ind.2005) (internal quotations omitted). Further, "every criminal conviction must be supported by evidence upon each material element of the crime charged, and it is well settled that *the name of the owner or possessor of property alleged to have been stolen is a material allegation which must be proven beyond a reasonable doubt.*" *Thomas v. State,* 423 N.E.2d 682, 685 (Ind. Ct.App.1981) (emphasis added) (citing *Buckley v. State,* 254 Ind. 621, 624, 261 N.E.2d 854, 856 (1970)); *see also Hensley v. State,* 497 N.E.2d 1053, 1055 (Ind.1986) (noting that name of owner or possessor of stolen property is a material allegation). A conviction may be sustained by circumstantial evidence alone. *Id.*

■ To establish that Pryor committed class D felony auto theft, the State had to prove that he knowingly exerted unauthorized control over Ambrosia Martin's motor vehicle, a 1997 Chevrolet Suburban, with intent to deprive her of the vehicle's value or use. *See* Ind.Code § 35–43–4–2.5; Appellant's App. at 14, 32. Specifically, Pryor argues that the State failed to establish the identity of the victim and that the stolen vehicle was the 1997 Chevrolet Suburban owned by the victim.

We find helpful *Shelby v. State,* 229 Ind. 186, 96 N.E.2d 340 (1951). There, Shelby appealed his conviction of vehicle taking, asserting that the evidence was insufficient to show that he took possession and assumed control of the 1940 Tudor Ford automobile belonging to Harry E. Devasier. The evidence showed that on August 5, 1950, Devasier was the owner of a 1940 Tudor Ford. He parked it in front of a tavern at 8:00 p.m. on Southwest Second Street in Evansville, and it was stolen ten minutes later. Later that night (the exact time was not in the record), Devasier recovered it on Waterworks Road. Both left fenders were damaged.

About 11:00 p.m., Shelby was operating a 1940 Tudor Ford on Waterworks Road. He sideswiped another vehicle and kept going. The occupants of the other vehicle chased him. After catching Shelby, two of the occupants held him down while the third went to get the police. Officers found Shelby in a 1940 Tudor Ford so intoxicated that he could not talk.

■ Our supreme court found that there was neither direct evidence nor evidence from which it could be inferred that the car in which Shelby was found belonged to Devasier. *Id.* at 188, 96 N.E.2d at 341. The court explained,

There is no evidence whatever that the automobile in which the appellant was found answered the description of the Devasier car except that both were 1940 Tudor Ford automobiles. This court judicially knows there are thousands of such vehicles on the road. There is no evidence that the automobiles were the same color or that they were equipped with the same or similar accessories; that they carried the same license plate number; [5] that Devasier's car was re-

5. Proof of license number or registration is not essential in establishing the identity of a stolen automobile. *Thomas,* 423 N.E.2d at

687; *see also Williams v. State,* 451 N.E.2d 700, 701–02 (Ind.Ct.App.1983) (same).

covered at or even near the point on the Waterworks Road where the appellant was apprehended; that the car recovered by Devasier was the same car in which the appellant was found; or even that there was only one accident involving a Ford Tudor automobile on Waterworks Road at about eleven o'clock that night. It is true that both left fenders of Devasier's car were damaged when the car was recovered, and the evidence shows that a 1940 Tudor Ford automobile being driven by the appellant was involved in an accident on the Waterworks Road that night. The evidence does not show, however, that the car the appellant was driving sustained damage to the left fenders in the accident or whether it was damaged at all, and considering the manner in which the cars involved in the accident came together, as shown by the evidence, it is difficult to see how the car the appellant was driving could have been damaged on the left side.

If the automobile which the appellant was operating, and in which he was found, belonged to Devasier, it seems to us it could have been proven without difficulty.

*Id.* at 188–89, 96 N.E.2d at 341. The court further observed, "It is not enough that evidence merely *tends* to support the conclusion of guilt; it must support it. We have said that a trace of evidence is not enough." *Id.* at 189, 96 N.E.2d at 341 (citations omitted) (emphasis in original).

In *Williams v. State,* 451 N.E.2d 700 (Ind.Ct.App.1983), the defendants argued that the evidence was insufficient to prove that the car they were charged with stealing belonged to Allen Weiner. The evidence most favorable to the verdict showed that:

Allen Wiener owned a 1975 Buick Electra automobile, which he reported to the police as being stolen. Two days later, Ted Wegila, owner of a towing company in Hammond, Indiana, watched Williams and White remove tires from a car and place them in the trunk of a brown Buick. Wegila notified the police by radio and while he was driving his tow truck toward the place where he had seen the cars, he saw the Buick and reported its license number to the police. Police officers found the Buick, its engine still running, and apprehended Williams and White a short distance away. Officer Kenneth Pavlina ran a check on the license number of the car and obtained the name of a company as the owner of the car. When he called the company, Weiner told Pavlina that his brown Buick had been stolen and that he had reported the theft to the Gary police. After Williams and White were taken into custody, Wegila identified them as the men he had seen put the tires into the brown Buick. Wegila towed the brown Buick to the police station and then to his lot. Weiner later identified a car on Wegila's lot as his Buick Electra.

*Id.* at 701. After recognizing that the name of the owner or possessor of stolen property is a material allegation that may be proven by circumstantial evidence, the *Williams* court concluded "that a reasonable inference may be drawn to support the jury's conclusion that the car Williams and White loaded tires into belonged to Weiner." *Id.*

In *Thomas,* 423 N.E.2d 682, another panel of this Court found that there was circumstantial evidence to support an inference that the defendant was apprehended in the 1966 red Pontiac station wagon belonging to Buford Pearson:

Pearson testified she owned such an automobile on the date in question and had last seen it on the eve of the theft

alleged herein, parked in a rented space in a parking lot located across the street from her residence on Fourth and Ferry. The Coopers testified they saw a vehicle, similar to the one described by Pearson as belonging to her, being driven out of a parking lot in the same vicinity at approximately 3:40 A.M. of the morning after Pearson last saw her vehicle where she had left it. The driver of the car had attempted entry of several other vehicles on the same street, finally entered the passenger side of the vehicle in question, engaged in extended suspicious activity before starting the vehicle, and drove the car off the lot in an erratic manner. Approximately 20 minutes after this activity was witnessed by the Coopers, Pearson signed a stolen car report. Since she had not authorized anyone to use her auto, we believe this evidence supports a reasonable inference that Pearson's 1966 red Pontiac station wagon with a white top was stolen on May 25, 1978 at approximately 3:40 A.M.

*Id.* at 686–87.

Here, the State asserts that the "jury could infer by circumstantial evidence that Ambrosia Martin was the owner of the car stolen by [Pryor]." Appellee's Br. at 4. The State relies on Corporal Beigelbeck's testimony that the victim who made the report to Corporal Johnson came to the scene of the stop and identified Pryor as the male who took her car and identified the car as the one she had reported stolen. Tr. at 88. The State also directs our attention to Officer Scott's testimony that he called in the vehicle's description and license number and that the midnight shift sergeant informed him that the vehicle had been stolen. *Id.* at 74.

We disagree that the testimony supports an inference that Pryor stole Ambrosia Martin's 1997 Chevrolet Suburban. At best, the evidence establishes or supports an inference that Pryor stole a black Suburban from a victim who had reported it stolen. In fact, there is less evidence here than there was in *Shelby,* and in that case the evidence was found insufficient. The *Shelby* court found the evidence insufficient even though there was evidence that Devasier owned a 1940 Tudor Ford, his Ford was found on Waterworks Road, and Shelby was apprehended in a 1940 Tudor Ford on Waterworks Road. In comparison to *Williams* and *Thomas,* here no evidence, direct or circumstantial, was introduced to establish the identity of the owner of the stolen property as alleged in the charging information. Unlike *Williams* and *Thomas,* no evidence was introduced from which the jury could infer that the vehicle stolen by Pryor was the year, make, and model it was alleged to be. Also, unlike *Williams, Thomas,* and even *Shelby,* no evidence was introduced from which the jury could infer that Ambrosia Martin owned a 1997 Chevrolet Suburban. Martin did not testify and no evidence identified her as the victim at trial. Therefore, there was no evidence from which the jury could infer that the vehicle stolen by Pryor was owned by Ambrosia Martin. The State's position would require the jury to assume that every time an officer testified as to the "victim," that officer was referring to "Ambrosia Martin" as named in the charging information. This is unacceptable, as it would open the door to government abuse and leave the accused vulnerable to double jeopardy. In a criminal case, the burden of proof is upon the State to prove the allegations beyond a reasonable doubt. Accordingly, we conclude that the evidence was insufficient to support Pryor's conviction. *Cf. Wainscott v. State,* 255 Ind. 107, 109, 262 N.E.2d 633, 634 (1970) (finding sufficient evidence of ownership of stolen vehicle where officer testified that it was regis-

374

tered to Mr. Jackson and Mr. Jackson testified that his black 1964 two-door Thunderbird had been stolen); *Arnold v. State,* 239 Ind. 592, 594–95, 159 N.E.2d 278, 278–79 (1959) (concluding evidence sufficient to identify vehicle that was allegedly stolen where victim owned 1957 yellow Chevrolet, police officer testified that defendant was driving muddied, 1957 yellow Chevrolet with damage including a hole in the grill, missing mirror, and broken radio aerial, and car owner testified that he reported car stolen and the next time he saw it, it had front end damage, was splattered with mud, and the mirror and aerial were broken off); *Trotter v. State,* 838 N.E.2d 553, 557 (Ind.Ct.App. 2005) (reversing on other grounds, but finding sufficient evidence that vehicle Trotter was driving was a 1995 Isuzu Rodeo owned by Brian Collins, where Collins recovered his black Isuzu Rodeo from the police on the same day Trotter was arrested in a stolen black Rodeo).

While it may have been a relatively simple matter for the State to have introduced the evidence necessary to establish Ambrosia Martin's ownership of the stolen vehicle, the fact of the matter is that it did not, and that deficiency is fatal to the prosecution.

Reversed.

BARNES, J., and BRADFORD, J., concur.